MORRISON–KNUDSEN COMPANY INC., a Delaware corporation, Plaintiff,

v.

MASSACHUSETTS BAY TRANSPORTA- TION AUTHORITY, a body politic and corporate organized under the laws of Massachusetts, Defendant.

Civ. No. 83–1124.

United States District Court, D. Idaho.

Nov. 7, 1983.

John T. Hawley, and P. Craig Storti, Hawley, Troxell, Ennis & Hawley, Richard J. McCain, Asst. General Counsel, Morrison-Knudsen Company, Boise, Idaho, for plaintiff.

Blaine Evans, John S. Simko, Elam, Burke, Evans, Boyd & Koontz, Boise, Idaho, for defendant.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

Defendant's Motion to Dismiss is properly before this court. Defendant, Massachusetts Bay Transportation Authority ("the Authority"), brings this motion to dismiss Plaintiff Morrison-Knudsen's ("M–K") suit asserting this court lacks proper federal jurisdiction. Defendant posits two arguments in support of its motion. First, defendant asserts that it is a dependent arm of the sovereign Commonwealth of Massachusetts and that the immunity afforded the Commonwealth under the eleventh amendment of the federal constitution bars this court from exercising jurisdiction over defendant. Second, defendant maintains that it is not a "citizen" for purposes of diversity jurisdiction within the meaning of 28 U.S.C. § 1332. Both parties filed briefs before this court arguing their respective positions. In addition, defendant submitted an affidavit with accompanying exhibits in support of its motion. Motions to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) are to be submitted on the pleadings alone. *Lodge 1380, Brotherhood of Railway, Etc., v. Dennis,* 625 F.2d 819 (9th Cir.1980). The affidavit and exhibits submitted by defendant in support of its motion are not properly before the court at the present time and the court specifically excludes them from its consideration. Oral argument was heard before the court on September 16, 1983, during which both parties were represented by counsel. It is the judgment of the court that defendant's Motion to Dismiss must be denied.

## I. FACTS

For purposes of this motion, the relevant facts are as follows: Plaintiff M–K is a worldwide construction company organized under the corporate laws of the State of Delaware with its principal place of business, operational base, and world headquarters located in Boise, Idaho. Defendant Authority is a body politic created and constituted pursuant to Chapter 161A of the General Laws of Massachusetts. *See* Mass.Ann.Laws ch. 161A (Michie/Law.Coop.1964). The Authority is charged with maintaining and operating a public mass transit system for the greater Boston area, including its surrounding seventy-nine cities and municipalities.

In October 1980, the Authority solicited bids for the rebuilding and converting of twenty-six Budd Rail Diesel Cars into locomotive-drawn passenger coaches for use in the subway and rail systems owned and

operated by the Authority. M–K was the successful bidder and the refurbishing contract was awarded to it. A dispute has arisen under the terms of the contract concerning the amount owed M–K by the Authority. The parties have been unable to resolve their dispute resulting in the present action.

## II. ISSUES BEFORE THE COURT

The Authority attacks the jurisdiction of this court by asserting two distinct and independent theories. The success or failure of both theories depends upon how this court classifies the nature of the Authority's position and function vis-a-vis the Commonwealth. The Authority may be classified as a dependent arm of the Commonwealth or as an independent political subdivision, separate and apart from the Commonwealth. If it is determined that the Authority is in actuality a governmental arm of the Commonwealth, then the Authority is not a citizen for 28 U.S.C. § 1332 diversity jurisdiction purposes. In addition, such a determination would cloak the Authority with the eleventh amendment immunity enjoyed by the Commonwealth. Conversely, if it is determined that the Authority is not a dependent arm of the Commonwealth, then the Authority is a citizen for purposes of diversity jurisdiction and does not partake in the Commonwealth's eleventh amendment immunity.

## III. THE AUTHORITY'S ELEVENTH AMENDMENT IMMUNITY

■ It is well-settled that where the state is the real party defendant, absent its consent, the eleventh amendment bars suits brought against it by its citizens or citizens of other states in federal court. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Whether a particular agency, such as the defendant Authority, is a dependent arm of the state so as to partake in its eleventh amendment immunity has been the subject of legion cases. The answer to the inquiry is determined by reference to federal law. A court must pay particular attention to the statutory scheme creating the agency and to the case law delineating the agency's functions. *DeLong Corporation v. Oregon State Highway Commission*, 233 F.Supp. 7 (D.Or.1964), *aff'd*, 343 F.2d 911 (9th Cir.), *cert. denied*, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965). Numerous tests have been formulated which identify the various agency characteristics which are important when determining whether an agency should be classified as an arm of the state or as an independent political subdivision thereof. In *Idaho Potato Commission v. Washington Potato Commission*, 410 F.Supp. 171 (D.Idaho 1975), then District Judge J. Blaine Anderson set forth the test to be adopted by federal courts in the District of Idaho when making this determination. The court held that, "two factors are of primary importance, namely, performance of a governmental function and the financial connection or independence between the agency and the sovereign." *Id.* at 175. The court further identified other characteristics for consideration, including the agency's ability to sue and be sued in its own name, the power of the agency to take property in its own name, and the corporate status or lack thereof of the agency. In *Hutchison v. Lake Oswego School Dist. No. 7*, 519 F.2d 961 (9th Cir. 1975), *cert. denied*, 429 U.S. 1037, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977), the Court of Appeals for the Ninth Circuit affirmed the importance of the financial relationship between the agency and the state treasury. The court stated:

> The most important factor in determining whether a particular agency is the "alter ego" of the State for Eleventh Amendment purposes is *whether payment of a judgment will have to be made out of the state treasury*, i.e., whether the fund in question has both the independent power and resources to pay the judgment without further action by the state legislature or other governmental officer." *Bowen v. Hackett*, 387 F.Supp. 1212, 1221 (D.R.I.1975). Also important to our decision are the follow-

ing factors: performance by the entity of an essential government function, ability to sue or be sued, power to take property in its own name or in the name of the State, and corporate status of the entity. *George R. Whitten, Jr., Inc. v. State University Construction Fund*, 493 F.2d 177 (1 Cir.1974). (emphasis added) *Id.* at 966. The Supreme Court has likewise emphasized the importance the financial status of the agency plays. In *Edelman*, the Court stated:

> "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."

*Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

■ The various agency characteristics identified by the courts as important considerations are delegated unequal degrees of importance. A careful reading of the cases discloses the weight which should be afforded each characteristic. The most important characteristic is the financial nexus between the agency and the state treasury. The focus of this inquiry is whether the state will be ultimately and *necessarily* liable for any judgment entered against the agency. Whether the agency performs an essential governmental function (as opposed to a proprietary function) should also be afforded significant consideration. Finally, and of approximately equal importance as between themselves, whether the agency may sue and be sued in its own name, take property by eminent domain, and whether it has independent corporate status should be considered.

#### (A) Independent Financial Status of the Authority

■ The Authority's financial relationship to the state treasury is established by Chapter 161A of the General Laws of Mas-

sachusetts [*see* Mass.Ann.Laws ch. 161A (Michie/Law.Coop.1964)], and by the case law of the Supreme Judicial Court of the State of Massachusetts. The scheme of Chapter 161A anticipates the probability that the Authority will incur financial budget deficits and provides a mechanism to pass the cost of the deficits on to the seventy-nine cities and municipalities served by the Authority.

Section 1 defines the "net cost of service" as:

> [T]he difference between (a) all income received by the authority ... and gifts and grants for current purposes, and (b) all current expenses incurred by the authority ... and all other expenses which the authority determines not to capitalize, when such expenses exceed such income.

In years when the Authority incurs a deficit as defined by the "net cost of service," Section 12 requires the Authority to notify the state treasurer of the amount of the deficit. The Commonwealth is then required to pay to the Authority the amount of the deficit. At this stage of the statutory scheme, it appears that the Commonwealth is financially accountable for any deficits incurred by the Authority. However, Sections 8 through 11 provide the Commonwealth with the means by which the Commonwealth may assess the "net cost of service" deficit back to the seventy-nine cities and municipalities served by the Authority. Though it is conceivable under this statutory scheme that any judgment entered against the Authority in this case could ultimately increase the "net cost of service" to the Commonwealth, it is also readily apparent that any increase in the "net cost of service" will be reimbursable to the Commonwealth through its power to assess the seventy-nine cities and municipalities. *See Massachusetts Bay Transportation Authority Advisory Board v. Massachusetts Bay Transportation Authority*, 382 Mass. 569, 417 N.E.2d 7 (1981).

■ Section 23 of Chapter 161A empowers the Authority to issue bonds and bond anticipation notes for specifically defined

purposes. One of those purposes includes the payment of capital costs incurred by the Authority which includes the type of expenditure required under the contract with M–K. Defendant notes that under Section 13 bondholders have a direct right against the Commonwealth and may require it to make disbursements to the Authority so that the Authority is able to meet its bond obligations. Defendant argues this right of bondholders directly against the State is sufficient to establish the Authority's ultimate financial dependence upon the State treasury. The Supreme Judicial Court of Massachusetts disagrees. In *Massachusetts Bay Transportation Authority v. Boston Safe Deposit and Trust Company*, 348 Mass. 538, 205 N.E.2d 346 (1965), the court indicated the statutory scheme of Chapter 161A fell short of establishing the Commonwealth as the principal borrower on bonds issued by the Authority. The court stated:

> The Commonwealth is of course not the ostensible borrower .... There are, however, related provisions that involve the Commonwealth in the repayment of the borrowings. The Commonwealth's obligation to pay the "net cost of service" appears to be the only firm assurance to holders of certain bonds of the Authority that the bonds will be paid
> ....
> We hold that none of these provisions, nor all of them, make the Commonwealth in substance, the principal in the Authority's borrowings. The principal is the Authority; it has a substantive, independent existence, a substantial business, and substantial business income. It is the Authority that borrows and for its own independent purposes.

*Id.* 205 N.E.2d at 358. This court is unpersuaded that the bond scheme of Chapter 161A establishes the Commonwealth as the principal borrower on the bonds issued by the Authority. Though in some cases Authority bondholders may have a direct right against the Commonwealth to ensure that the obligations due them under their bonds are met by the Authority, these expenses incurred by the Commonwealth become part of the "net cost of service" and may be passed on to the seventy-nine cities and municipalities served by the Authority. *See* Sections 1 and 13 of Chapter 161A.

■ Finally, defendant points out that the Commonwealth has provided substantial financial assistance to the Authority over the past several years. This financial assistance originates primarily under Section 28 of Chapter 161A, which permits the Commonwealth to "contract assistance" to the Authority. Section 28 provides: "The commonwealth ... may enter into a contract or contracts with the authority providing that a portion of the net cost of service shall be paid by the commonwealth, and shall not be assessed upon the cities and towns constituting the authority." It is important to note that the potential assistance provided the Authority under Section 28 is permissive in nature and the amount of the assistance is completely within the sound discretion of the Commonwealth. Though past experience establishes the assistance provided the Authority pursuant to Section 28 comprises a relatively large percentage of the Authority's financial budget, this fact alone does not establish a sufficient nexus between the Authority and the Commonwealth's treasury so as to cloak the Authority with eleventh amendment immunity. In *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court was presented with the question of whether significant state financial aid to the petitioner school board was sufficient to establish the board as a dependent arm of the State. The Court held:

> The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances ... but does not extend to counties and similar municipal corporations.... The issue here thus turns on whether the Mt. Healthy Board of Education is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Elev-

enth Amendment does not extend. The answer depends, at least in part, upon the nature of the entity created by state law. Under Ohio law the "State" does not include "political subdivisions," and "political subdivisions" do include local school districts.... Petitioner is but one of many local school boards within the State of Ohio. It is subject to some guidance from the State Board of Education ... *and receives a significant amount of money from the State....* On balance, the record before us indicates that a local school board such as petitioner is more like a county or city than it is like an arm of the State. We therefore hold that it was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts. (citations omitted) (emphasis added)

*Id.* at 280–81, 97 S.Ct. at 572–73. The fact that the Commonwealth of Massachusetts chooses to provide a significant amount of financial assistance to the Authority does not require the outcome advanced by defendant. Defendant's argument that the substantial assistance provided the Authority by the Commonwealth cloaks the Authority with the eleventh amendment immunity is not persuasive and is at odds with the decision in *Mt. Healthy.*

Based on the foregoing discussion, the court finds that Defendant Authority is financially independent from the Commonwealth of Massachusetts for the purposes of eleventh amendment immunity.

### (B) Governmental versus Proprietary Function of the Authority

■ Another characteristic which is important when determining whether a particular governmental agency is an arm of the state for eleventh amendment purposes, is whether the agency performs a "governmental" or "proprietary" function. *See DeLong Corporation v. Oregon State Highway Commission,* 233 F.Supp. 7 (D.Or.1964), *aff'd,* 343 F.2d 911 (9th Cir.), *cert. denied,* 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965); *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247 (3d Cir.1969); *Blake v. Kline,* 612 F.2d 718 (3d Cir.1979). Whether a particular agency activity constitutes a "governmental" or "proprietary" function is very often difficult to determine. Only a broad general statement of the law is possible, leaving individual cases to be decided on their unique facts and circumstances. In an analogous context, the various functions of municipal corporations have been classified as "governmental" or "proprietary." A widely recognized authority on the law of state and local government has identified general characteristics which should be examined when determining whether a municipality is performing in its "proprietary" or "governmental" capacity:

The purposes of municipal corporations ... are twofold: the one to assist in the government of the state as an agent of the state, often referred to as an arm of the state, and to promote the public welfare generally; the other to regulate and to administer the local and internal affairs of the territory which is incorporated, for the special benefit and advantage of the urban community embraced within the corporate boundaries. [footnote omitted] These two functions are usually referred to as the dual powers of municipal corporations. [footnote omitted] When acting in their public or governmental capacity, municipal corporations are an agency of the state for conducting the affairs of government. [footnote omitted] Although it has been said that the character and nature of municipal corporations remain at all times the same, [footnote omitted] *in their public or governmental capacity they act as the agent of the state for the benefit and welfare of the state as a whole, but when acting for the peculiar and special advantage of their inhabitants, rather than for the good of the state at large, they act in a private or proprietary capacity.* [footnote omitted] When acting in their private or proprietary character, they are a separate entity acting for their own purposes, and not a subdivision of the state, [footnote omitted] and they represent those

proprietary interests that appertain to them in common with other corporations. [footnote omitted] (emphasis added)

*See* 1 McQuillan, *Municipal Corporations,* § 1.09 (1971). The characteristics identified by McQuillan are relevant when determining whether other state agencies, such as the Authority, are performing "governmental" or "proprietary" functions. In the Authority's case, it is clear that it serves a local rather than statewide interest. The Authority's function is to provide suitable mass transportation for the greater Boston area. The Authority is not charged with coordinating public transportation for the entire Commonwealth. Since the object of the Authority's concern is local, under the standards set forth by McQuillan, it follows that the Authority is performing a proprietary rather than governmental function.

Defendant notes that the Supreme Judicial Court of Massachusetts has held that the purpose of the Authority is clearly public. *See Massachusetts Bay Transportation Authority v. Boston Safe Deposit and Trust Company,* 348 Mass. 538, 205 N.E.2d 346 at 350. Defendant interprets this case as a definitive statement construing the Authority's function as "governmental." This court disagrees with defendant's reading of the case. The reference by the court to the "public" purpose of the Authority was not raised in the context of whether the Authority performed a "governmental" or "proprietary" function. Rather, the statement was made in reference to whether the Authority's functions were sufficiently public in nature so as not to offend the general proscription against governmental agencies engaging in strictly private commercial activities. It is the conclusion of this court that, though the Authority serves a "public" purpose, it does not function in a "governmental" capacity on behalf of the Commonwealth of Massachusetts. The Authority functions at a local level, acting in a proprietary capacity, providing a comprehensive approach to the mass transportation problems of the greater Boston area.

### (C) Other Relevant Entity Characteristics

Three other agency characteristics have been mentioned frequently in the case law which has dealt with the issue before the court. These characteristics are relatively equal in importance, but significantly less important in comparison to the two characteristics addressed above. The statutory ability of the agency to sue and be sued in its own name, the statutory power of the agency to take property by eminent domain in its own name, and the statutory corporate status or "political subdivision" status of the agency are characteristics to be considered. *See Idaho Potato Commission v. Washington Potato Commission,* 410 F.Supp. 171 (D.Idaho 1975), and *Hutchison v. Lake Oswego School District No. 7,* 519 F.2d 961 (9th Cir.1975), *cert. denied,* 429 U.S. 1037, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977).

Examining these characteristics in turn, the Authority appears to be more like an independent political subdivision than an arm of the Commonwealth. First, Section 2 of Chapter 161A specifically states that, "[t]he authority shall have power to hold property, to sue and be sued in law and equity and to prosecute and defend all actions relating to its property and affairs. The authority shall be liable for its debts and obligations ...." The manifest import of this language is apparent. The Authority, similar to other independent political subdivisions, has the express power to sue and be sued in its own name. It has the power to hold property in its own name, and it is liable for its own obligations. These characteristics give rise to the implication that the Authority was meant to be autonomous from the Commonwealth. Second, Section 3, which delineates some of the various powers of the Authority, provides in subsection (*o*) that the Authority shall have the power "[t]o take real property by eminent domain ...." Again, this agency characteristic argues in favor of the Authority's autonomy. Third, and most significant of the three, the corporate status of the Authority argues for a finding of autonomy. Title XXII of the General Laws of Massachusetts is entitled "Cor-

porations" and contains Chapter 161A, which created the Authority. Section 2, Chapter 161A, provides: "The territory within and the inhabitants of [the towns and cities comprising the authority] are hereby made a *body politic and corporate and a political subdivision of the commonwealth* under the name of Massachusetts Bay Transportation Authority." (emphasis added) Section 3(a) grants the Authority the power to adopt and use a corporate seal. Section 3(e) grants the Authority the power to adopt bylaws. Finally, Section 3(f) grants the Authority extensive powers to contract. These are characteristics of independent political subdivisions, not of dependent arms of the commonwealth.

■ After careful review, it is the opinion of the court that defendant has failed to establish that the Authority is a dependent arm of the Commonwealth. Defendant has failed to show that the treasury of the Commonwealth will necessarily be affected if the court enters judgment for plaintiff. The statutes creating the Authority, as complicated and interrelated as they may be, allow the Commonwealth to pass on costs it incurs with respect to the activities of the Authority. Nor does the Authority provide an essential governmental function. The Authority serves a local interest and engages in the business of transportation, which traditionally has been the province of the private sector. Finally, various other important characteristics of the Authority all argue in favor of the outcome reached by this court today. It is the opinion of the court that the Authority is an independent political subdivision of the Commonwealth of Massachusetts. It is well-settled that the immunity afforded the state under the eleventh amendment does not extend to political subdivisions. *See Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and cases cited therein at U.S. 280. The eleventh amendment does not bar M–K's suit in the instant case.

## IV. THE AUTHORITY'S CITIZENSHIP FOR DIVERSITY PURPOSES

■ It is well-settled that a state is not a citizen for purposes of diversity jurisdiction. *State Highway Commission v. Utah Construction Company,* 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); *Postal Telegraph Cable Company v. State of Alabama,* 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894). Where a party files suit in federal court based solely on diversity jurisdiction, if the real party defendant is a state, no diversity jurisdiction exists and the suit must be dismissed. Defendant poses the identical argument here as it did in relation to the Authority's claimed eleventh amendment immunity. Defendant argues that the defendant Authority is merely an arm of the Commonwealth and that the Commonwealth is the real party defendant. This court has determined that the Authority is not a dependent arm of the Commonwealth. It follows then that the Authority is a citizen for the purposes of diversity jurisdiction. As a citizen, the Authority is subject to this court's diversity jurisdiction when sued by a proper party. M–K is a corporation incorporated under the laws of Delaware with its principal place of business located in Boise, Idaho. The Authority is a Massachusetts corporation with its principal place of business located in Massachusetts. Under these circumstances, this court's diversity jurisdiction over the subject matter is well-established. 28 U.S.C. § 1332(c).

## V. CONCLUSION

Defendant's dual attack on this court's jurisdiction is rejected. The Authority is not a dependent arm of the Commonwealth of Massachusetts and does not partake in the protection afforded the Commonwealth under the eleventh amendment. Further, the Authority has failed to establish that it is not a citizen for purposes of diversity jurisdiction. Consequently, M–K's alleged diversity jurisdiction is well-founded. Defendant's Motion to Dismiss should be, and hereby is, DENIED.

IT IS SO ORDERED.