**Henrietta S. MILBOUER, Plaintiff,**

v.

**William J. KEPPLER, as Dean of the School of Arts and Sciences at Boise State University; Richard E. Bullington, as Executive Vice-President of Boise State University; John H. Keiser, as President of Boise State University; State of Idaho Board of Education and Boise State University, Defendants.**

**Civ. No. 84–1299.**

United States District Court,
D. Idaho.

Sept. 16, 1986.

As Amended Sept. 16, 1986.

202

John P. Howard, Quane, Smith, Howard & Hull, Boise, Idaho, for defendant Bd. of Educ.

Donald W. Lojek, Bradley H. Hall, Lojek, Penland & Munther, Chartered, Boise, Idaho, for defendants Keppler, Bullington, Keiser & Boise State University.

W. Craig James, Skinner, Fawcett & Mauk, Boise, Idaho, for plaintiff.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

### I. FACTS & PROCEDURE

This action arises from the discharge of plaintiff from her position as a tenured professor from Boise State University (BSU) following a declaration of financial exigency by the State Board of Education in June of 1982. Plaintiff filed an action against the named defendants in June of 1984, alleging breach of contract, wrongful discharge, and denial of substantive and procedural due process in violation of the fourteenth amendment of the United States Constitution and 42 U.S.C. § 1983. The action was originally brought in state court, but was removed to this court by an order dated December 3, 1984.

On November 19, 1985, co-defendants BSU, William Keppler, Richard Bullington, and John Keiser filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant State Board of Education filed a Motion for Summary Judgment on November 20, 1985. Plaintiff's brief in opposition and defendants' reply briefs were subsequently filed. On September 3, 1986, this court heard oral argument on the Motions for Summary Judgment. All parties were represented by counsel.

### II. STANDARD OF REVIEW

A party is entitled to summary judgment if there is no genuine issue of material fact, and if, after viewing the evidence and permissible inferences in the light most favorable to the adverse party, the moving party is entitled to prevail as a matter of law. *Lupert v. California State Bar*, 761 F.2d 1325 (9th Cir.1985); Fed.R.Civ.P. 56(c). When a motion for summary judgment is made and supported, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed.R. Civ.P. 56(e).

### III. DISCUSSION

Plaintiff asserts that the defendants, by declaring a "financial exigency," which did not in fact exist, arbitrarily and capriciously deprived her of employment at BSU, causing a breach of her employment and tenure contracts with the University.

■ When an instructor is discharged from a tenured position because of a financial crisis, the educational institution has the burden of proving both of the following: (1) that a genuine financial exigency existed at the institution, and (2) that a uniform set of procedures were used by the institution in determining what faculty members would be discharged. *Bignall v. North Idaho College*, 538 F.2d 243 (9th Cir.1976).

#### A. *Financial Exigency*

■ Financial exigency, as defined by the Idaho State Board of Education, is: [A] demonstrably bona fide, imminent financial crisis which threatens the viability of an agency, institution, office or department as a whole, or one or more of its programs, or other distinct units, and which cannot be adequately alleviated by means other than a reduction in the employment force. A state of financial exigency shall exist only upon Board declaration.

Idaho State Board of Education, Policy Manual for Higher Education Institutions, "Financial Exigency Policy and Staff Reduction Procedures" (IDAPA08.00.1.–2, 4)

In July of 1981, BSU implemented University Policies 5500–B and 5501–B in the Faculty Handbook. Rule 5500–B adopted the Idaho State Board of Education definition of financial exigency, and Rule 5501–B set forth an appeals procedure for faculty members terminated as a result of the declaration of a "financial exigency" by the State Board of Education.

On June 14, 1982, Governor John Evans issued Executive Order 82–13 directing

agencies of Idaho to submit to the governor plans for reducing budget expenditures for fiscal year 1983 by nine percent. In compliance with the executive order, the State Board of Education advised the State institutions of higher learning, including BSU, of the nine percent holdback and requested that the universities inform the State Board as to whether a financial exigency existed at their respective institutions.

On June 2, 1982, Defendant John Keiser testified before the State Board of Education that based upon a thorough investigation of the financial situation at BSU, a financial exigency did exist. The University subsequently submitted a Budget Reduction Plan to the State Board, which was approved on July 14, 1982. This Budget Reduction Plan included the termination of plaintiff from her tenured position.

The preponderance of the evidence shows that a genuine financial exigency existed at BSU in June of 1982. The University had suffered significant budget reductions as a result of previous budget holdbacks ordered by the governor in fiscal years 1980 through 1982. These holdbacks did not result in loss of faculty members at BSU. However, when the nine percent reduction was ordered in June of 1982 for fiscal year 1983, the University was forced to take the drastic step of dismissing faculty members, including plaintiff.

In response to defendants' Motions for Summary Judgment, plaintiff has submitted to this court a partial transcript from the district court proceedings in the case of *Pace v. Hymas*, Civil No. 17292 (District Court of the State of Idaho, Second Judicial District, January 15, 1985), in which Judge Ron Schilling found that a financial exigency did not exist at the University of Idaho in fiscal year 1982. This decision has recently been upheld by the Idaho State Supreme Court. *Pace v. Hymas*, 111 Idaho 581, 726 P.2d 693 (1986). The facts of the *Pace* decision have no bearing on the present case. *Pace* involved the termination of a University of Idaho faculty member from her position with the Agricul-

ture and Extension Department. More importantly, the *Pace* decision involved a totally different fiscal year (1982) than the fiscal year 1983 in the present case.

Plaintiff also places emphasis on the fact that the University had a surplus of over $300,000 from fiscal year 1982. It is undisputed, however, that Defendant Keiser was directed to retain those funds in anticipation of further holdbacks. Such a holdback did occur in October 1982, leaving only some $27,000 "surplus" remaining. This amount was simply not enough to solve the severe and long-standing budgetary problems facing the University.

Having reviewed the evidence and permissible inferences in the light most favorable to the plaintiff, the court finds that the defendants are entitled to summary judgment on the issue of whether a financial exigency existed at BSU for fiscal year 1983. This holding is consistent with the decision in *Scholes v. Healas*, Civil No. 83–1198 (D.Idaho April 3, 1985) [Available on WESTLAW, DCTU database], in which Judge McNichols also found that a genuine financial exigency existed at BSU during fiscal year 1983, justifying the removal of a tenured professor.

### B. *Due Process Claims*

The second prong of the *Bignall* test requires the institution to prove that uniform procedures were used in determining what faculty members would be discharged as a result of financial exigency. Plaintiff asserts that the defendants implemented the Budget Reduction Plan, in an arbitrary and capricious fashion, all in violation of her substantive and procedural due process rights.

#### 1. *Substantive due process rights.*

█ Tenure does provide plaintiff with a property interest as set forth in the due process clause of the fourteenth amendment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). There is no evidence in this case, however, indicating that the in-

terest was taken in an arbitrary or capricious fashion. In formulating a plan for dealing with the budgetary cutbacks, Defendant Keppler, then Dean of the College of Arts and Sciences, looked at the following criteria: student-teacher ratios, enrollment trend analysis, number of majors, and total students serviced in career opportunities. Defendant made a three to five-year analysis of the academic programs at BSU using the above criteria. Applying the standards specifically to the German language program, Defendant Keppler found that it was a low priority program. Student enrollment was extremely low and only three to four students had graduated from the program from 1980 to 1982.

In light of the low student participation, Defendant Keppler recommended that the German Department, and the Foreign Languages Department as a whole, be eliminated from the curriculum at BSU. The criteria evaluation and recommendation were consistent with University policy 5500–B. The number one criteria in determining removal of staff is the viability of essential university programs. In light of the low participation in the German program, it was apparent that it, and its staff, would have to be subordinated to other active and viable university programs. Plaintiff was not discriminately chosen for dismissal from the Foreign Language Department, as the entire department was eliminated and has yet to have been reinstated. Plaintiff also points to the fact that fifteen new faculty members were hired after her dismissal in 1982. However, these new faculty members were hired to fill vacancies in programs that were still a viable part of the University's curriculum. None of the new faculty members were hired to replace faculty that were laid off as a result of the budget crisis.

Plaintiff further points to the University's failure to reinstate her in another position in the University. BSU policy 5500–B, section II–C–1, provides that the University must "make a good faith effort to relocate any affected faculty member in a suitable vacant position within the University."

The University must also "consider retraining as an alternative to layoff." Again, it is undisputed that the University complied with this regulation. Plaintiff was offered a part-time position within the English Department at BSU, which she turned down. She was also offered the possibility to retrain for a position as a linguistic specialist in the business field. The University requested and received approval of the Defendant State Board of Education to waive tuition and fees for plaintiff to enroll in a program which would train her in the field. She did temporarily enroll in such a program, but abandoned it for a position at a Florida university.

### 2. *Procedural due process claims.*

Plaintiff has also alleged violation of certain procedural due process rights; namely that she was not given adequate notice of her termination and was not given a fair appeals hearing.

■ In the context of a dismissal of a tenured professor, the minimum procedural elements include, (1) written notice of the reasons of the termination, and (2) an opportunity to rebut those reasons. *Bignall v. North Idaho College,* 538 F.2d 243 (9th Cir.1976); *Russell v. Harrison,* 736 F.2d 283 (5th Cir.1984); *Levitt v. University of Texas at El Paso,* 759 F.2d 1224 (5th Cir. 1985).

### (a) *Notice.*

■ The State Board of Education approved the University Budget Reduction Plan on July 14, 1982. On July 15, 1982, Defendant Keiser sent a cable to plaintiff in Germany and a letter to plaintiff's address in Boise setting forth in detail the reasons for her termination. Defendant Keiser attached to the letter a copy of the Budget Reduction Plan, as well as copies of the University's policies on financial exigency and the appeals procedures applicable thereto. This letter certainly satisfied the requirements of procedural due process. Plaintiff would direct the court's attention to the faculty handbook of the Uni-

versity which provides that a tenured faculty member must be given thirty days notice in advance of a recommendation of layoff. Plaintiff points to the fact that she received her last paycheck on July 1st. She considers this to be the termination date because she would have received a check on August 1st if she was still actively employed with the University. The court agrees that plaintiff would have been paid on August 1, 1982, if she indeed was going to be retained. However, Defendant Keiser's letter clearly stated that plaintiff's termination was not effective until August 15, 1982. The purpose of notice is to allow a plaintiff an opportunity to prepare a case against the institution. *Bignall v. North Idaho College*, 538 F.2d 243 (9th Cir.1976). The facts clearly indicate that the one-month notice given to plaintiff did give her an opportunity to submit a detailed letter explaining her grounds for appeal, and an opportunity to a full hearing before the appeals council.

#### (b) *Appeals hearing.*

BSU policy 5501–B sets forth the standards for appealing a termination for financial exigency. Plaintiff presents no evidence indicating that the University failed to comply with this policy. The policy provides that a plaintiff is entitled to a prompt hearing after filing a written request. It is undisputed, on August 5, 1982, plaintiff submitted a written appeal for a hearing. A hearing was promptly held August 9, 1982. Pursuant to the regulations, plaintiff was allowed to voice a response to the dismissal, to question Defendants Keppler, Keiser and Bullington, and to introduce exhibits on appeal. After hearing all of the evidence, the council ruled that there had not been a violation of the University regulations in the dismissal of the plaintiff.

Plaintiff has presented no particular facts raising a genuine issue as to the due process claims. The University adhered to all regulations and procedures in dismissing plaintiff, gave her sufficient notice of termination, and gave her a fair hearing on the matter. Summary judgment will be granted on the due process claims.

#### C. *Eleventh Amendment*

In view of the determinations made by the court regarding financial exigency and the due process claims, it is not critical for the court to address the eleventh amendment issues. However, in light of the extensive briefing by the parties on the eleventh amendment, the court believes it would be instructive to make a ruling on this issue.

#### 1. *State Board of Education.*

The eleventh amendment provides the following:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The eleventh amendment also bars suits for money damages brought in federal court by a citizen against that citizen's own state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The eleventh amendment applies to all federal claims, as well as state law claims, brought into federal court under pendent jurisdiction. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In the absence of an unequivocal expression of consent, a suit in which the state or one of its agencies or departments is named as a defendant is barred by the eleventh amendment. *Id.* at 99, 104 S.Ct. at 907.

In the case of *Morrison-Knudsen Co. v. Massachusetts Bay Transportation Authority*, 573 F.Supp. 698 (D.Idaho 1983), this court set forth a two-part test in determining whether an agency should be classified as an arm of the state and thus immune from suit under the eleventh amendment. The two facts to be considered are (1) whether the agency performs a governmental function, and (2) whether there was a financial connection or interdependence between the agency and the sovereign.

Applying this two-part test to the State Board of Education, the court finds that it is immune from suit in federal court pursuant to the eleventh amendment. Idaho Code § 33–101 provides that: "The State Board of Education and all of its offices, agencies, divisions and departments shall be an executive department of the state government." Article 9, section 2 of the Idaho Constitution grants the State Board of Education broad powers in supervising the State's education. Furthermore, Idaho Code § 76–2025 provides that the State Board of Education must pay all moneys received to the Idaho State Treasurer.

Plaintiff's argument that under the Idaho Tort Claims Act, Idaho Code § 6–901, *et seq.*, Idaho has generally waived eleventh amendment immunity is not persuasive. Idaho Code § 6–903(f) specifically provides that "[a]ny immunity or other bar to a civil lawsuit under Idaho or federal law shall remain in effect. The Idaho Tort Claims Act does not unequivocally express a desire on the part of the State to waive its immunity from suit in federal court. The State Board of Education may not be sued in federal court on plaintiff's federal claims or pendent state law claims.

### 2. *BSU and officials.*

The question as to whether BSU is immune from suit under the eleventh amendment is a more difficult one to answer. While plaintiff has cited several older cases indicating that sovereign immunity does not apply to state universities, the modern trend is to hold that such institutions are not subject to suit in federal court. This trend has been followed by this district court in the recent decision in *Ferguson v. Greater Pocatello Chamber of Commerce*, 647 F.Supp. 190 (D.Idaho 1985), in which District Judge Callister granted Idaho State University's motion for partial summary judgment based on eleventh amendment immunity. Judge Callister based his decision on affidavits from University officials that indicated that appropriated funds received from the State were designated for satisfying any adverse

judgments against the University. And, that even if non-appropriated funds were used to satisfy judgments, appropriated funds would have to fill the void left by paying the money judgment. This, the court found, had an impact on the State Treasury sufficient to bring Idaho State within the protection of the eleventh amendment.

In the instant case, Defendant Bullington, Executive Vice-President of BSU, indicates that a substantial portion of BSU's annual budget is received from the Idaho State Legislature. It is asserted that such funds would most likely be used to satisfy any judgment entered by the court against BSU and its officials. Defendant Bullington further claims that even if non-appropriated funds were used to satisfy the judgment, it would have an impact upon the appropriated funds in that they would have to be shifted to pay the shortfall created by the use of non-appropriated funds. Plaintiff has failed to present any evidence to refute this assertion.

Adopting Judge Callister's holding in *Ferguson*, this court finds that BSU is within the coverage of eleventh amendment immunity. This holding is consistent with several recent Ninth Circuit decisions. *See, e.g., Hall v. Hawaii*, 791 F.2d 759 (9th Cir.1986); *Spaulding v. University of Washington*, 740 F.2d 686 (9th Cir.1984); *Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir.1982).

The recent opinion in *Hall* is particularly instructive when ruling upon the eleventh amendment immunity of the BSU officials. The court noted that eleventh amendment immunity applies to state officials whenever the relief sought would have an impact on the state itself. *Hall v. Hawaii*, 791 F.2d at 762. In the instant case, it is clear that while plaintiff seeks relief against named university officials, she is attacking a state and university policy and would receive any damages from the State Treasury. Applying the rationale of *Hall*, the court finds that the University officials are also immune from suit under the eleventh amendment because an action against the

officials is, in this case, an action against the State. This decision would also bar plaintiff's claim for injunctive relief for reinstatement, which would also require disbursement of state funds for her salary, or at the least, cause such a shortfall of non-appropriated funds that state funds would have to be used to make up for the loss.

The court realizes that plaintiff originally brought her claim in state court, and that it was subsequently removed by order of this court on December 3, 1984. However, this does not diminish the force of eleventh amendment immunity. In the *Pennhurst* decision, the Supreme Court explicitly held that, "neither pendent jurisdiction nor any other basis of jurisdiction may override the eleventh amendment." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. at 121, 104 S.Ct. at 919. In this case, removal jurisdiction cannot override the eleventh amendment immunity powers.

Based upon the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the defendants' Motions for Summary Judgment should be, and are hereby, GRANTED.