**UNION PACIFIC RAILROAD COMPANY, a Utah corporation, and Oregon Short Line Railroad Company, a Utah corporation, Plaintiffs,**

v.

**STATE OF IDAHO; Idaho Department of Water Resources and Kenneth Dunn, Director; Cassia County, a political subdivision of the State of Idaho; J. Weldon Beck, Norman Dayley and John Adams, Cassia County Commissioners; and Oakley Canal Company, an Idaho corporation, Defendants.**

Civ. No. 86–1305.

United States District Court,
D. Idaho.

March 4, 1987.

Duane A. Bybee, Green, Service, Gasser & Kerl, Pocatello, Idaho, for plaintiffs.

Elizabeth G. Roper, Quane, Smith, Howard & Hull, Boise, Idaho, for defendants State, Dept. and Dunn.

Charles Johnson, III, L. Charles Johnson, Johnson Olson Robison, Chartered, Pocatello, Idaho, Stephen A. Bywater, Prosecuting Attorney, Cassia County, State of Idaho, Burley, Idaho, for defendants Cassia County and Comm'n.

Thomas G. Nelson, Terry T. Uhling, Nelson, Rosholt, Robertson, Tolman & Tucker, Twin Falls, Idaho, for defendant Oakley.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

### I. INTRODUCTION

Defendants Cassia County and Cassia County Commissioners have filed a Motion to Dismiss in this action. Defendants State of Idaho, Idaho Department of Water Resources, and Kenneth Dunn, Director of the Idaho Department of Water Resources, have filed a Motion for Summary Judgment. Defendant State of Idaho previously filed a motion to dismiss, but when plaintiffs amended their Complaint to name the Idaho Department of Water Resources and Kenneth Dunn, the State joined the other parties in filing a motion for summary judgment. Oakley Canal Company has not filed a dispositive motion in this matter. The court conducted a hearing on the motions on February 2, 1987. All parties were represented by respective counsel.

### II. FACTUAL BACKGROUND

Plaintiff Oregon Shoreline Railroad Company owns, and Union Pacific Railroad

Company leases, railroad right-of-way property in Cassia County, Idaho, for use in interstate and intrastate rail operations. On May 16, 1984, Cassia County, through its commissioners, and pursuant to the Idaho Constitution, adopted an ordinance providing for construction of a channel to carry floodwaters from the Lower Goose Creek Reservoir to the Snake River. On September 5, 1986, plaintiffs filed a Complaint in this court alleging that following adoption of the above ordinance Defendant Cassia County, and those acting under its authority, entered upon plaintiffs' property to construct the channel and, in so doing, damaged and destroyed plaintiffs' property and in the process forced plaintiffs to install additional drainage facilities under their rails to prevent washing out and disruption of interstate commerce. The action was originally brought against the State of Idaho, Cassia County, and Cassia County Commissioners under the Idaho Tort Claims Act. Claim was brought for damages to plaintiffs' real property, fixtures and personal property, as well as costs for installation of additional drainage facilities. Recovery was sought under theories of negligence, inverse condemnation, trespass, strict liability, and conversion. Plaintiffs filed an Amended Complaint on October 8, 1986, naming as additional defendants the Idaho Department of Water Resources and Kenneth Dunn, Director of the Department. Plaintiffs also dropped their claim for inverse condemnation from the complaint, seeking instead just compensation pursuant to the fifth and fourteenth amendments to the United States Constitution for the real property allegedly appropriated for public use.

## III. DEFENDANTS STATE OF IDAHO, IDAHO DEPARTMENT OF WATER RESOURCES AND DUNN'S MOTION FOR SUMMARY JUDGMENT

These defendants assert several grounds for their Motion for Summary Judgment.

The threshold ground that this court must address is the claim for immunity from suit by virtue of the eleventh amendment of the United States Constitution.

### A. *State of Idaho*

The eleventh amendment of the United States Constitution states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...."

▮▮▮ The eleventh amendment also bars suits for money damages brought in federal court by a citizen against that citizen's own state. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The eleventh amendment applies to all federal claims as well as state law claims brought into federal court under pendent jurisdiction. *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

▮▮▮ However, a state may waive its immunity and consent to suit in federal court. *Id.* at 99, 104 S.Ct. at 907. It is essential, however, "that the State's consent be unequivocally expressed." *Id.* Plaintiffs assert that the State has consented to be sued in the federal court by the provisions of the Idaho Tort Claims Act. This court found such an argument unpersuasive in the recent opinion of *Milbouer v. Keppler,* 644 F.Supp. 201 (D.Idaho 1986) (as amended by Order filed January 15, 1987). In holding that the Idaho Tort Claims Act does not constitute a waiver of state immunity, the court cited Idaho Code § 6–903(f), which states: "Nothing in this act shall enlarge or otherwise adversely affect the liability of an employee or a governmental entity. *Any immunity or other bar to a civil lawsuit under Idaho or federal law shall remain in effect.*" [1]

---

**1.** Plaintiffs rely on Idaho Code § 6–903(c) for their assertion that the Idaho Tort Claims Act provides an unequivocal waiver of the govern-

ment's immunity to suit in federal court. Section (c) reads: "The defense of its *employee* by the *governmental entity* shall be undertaken

(emphasis added) The State of Idaho is immune from suit in federal court.

### B. *Idaho Department of Water Resources*

■ In determining whether an agency is an arm of the state and thus immune under the eleventh amendment, this court has generally considered two factors: (1) whether the agency performs a governmental function, and (2) whether there is a financial connection or interdependence between the agency and the sovereign. *Morrison-Knudsen Co. v. Massachusetts Bay Transportation Authority*, 573 F.Supp. 698 (D.Idaho 1983); *Milbouer v. Keppler*, 644 F.Supp. 201 (D.Idaho 1986) (as amended by Order filed January 15, 1987).

■ The Idaho Department of Water Resources (Department) satisfies the above two criteria and is immune from suit in this court. The Department is an executive department of the state government. Idaho Code § 42–1701. As an executive agency of the State, the Department "under the police power of the state ... supervise[s] the construction, enlargement, alteration, repair, maintenance, operation and removal of dams and reservoirs for the protection of life and property." Idaho Code § 42–1710. All dams and reservoirs in the State are under jurisdiction of the Department. *Id.* The Department performs acts as the agent of the State, for the benefit of the State as a whole, rather than acting in a proprietary function serving a mere local interest. *Morrison-Knudsen Co. v. Massachusetts Bay Transportation Authority*, 573 F.Supp. at 703.

The evidence presented by defendants also clearly establishes the financial dependence of the Water Resources Board upon the State. The affidavit of Kenneth Dunn, Director of the Department, firmly establishes that the Department relies on funding from the State Legislature to carry out its activities. Dunn's affidavit also indicates that any monetary judgment entered against the Department would be paid from the Idaho State Treasury through the Bureau of Risk Management of the State Division of Administration as provided in Title 6, Chapter 9 of the Idaho Code.

### C. *Kenneth Dunn, Director of Department of Water Resources*

■ In *Milbouer*, this court held that eleventh amendment immunity applies to state officials whenever the relief sought would have an impact on the state itself. *Milbouer v. Keppler*, 644 F.Supp. 201, 207 (D.Idaho 1986) (as amended by Order filed January 15, 1987), *citing Hall v. Hawaii*, 791 F.2d 759 (9th Cir.1986). Dunn's sworn affidavit states that any monetary judgment against him would be paid from the Idaho State Treasury through the Bureau of Risk Management. Plaintiffs have responded to Dunn's affidavit by stating that Section 6–919 of the Idaho Tort Claims Act provides that the administrator of the Division of Insurance Management shall provide insurance coverage in an amount not less than $500,000 to protect the State and its employees from claims in civil lawsuits. Because the State is insured from any claims and civil lawsuits, it is asserted that it will not affect the State treasury. This argument is not persuasive. Whether the State directly pays a monetary judgment or purchases insurance to protect itself in the

whether the claim and civil lawsuit is brought in Idaho district court under Idaho law or is brought in a *United States* court under *federal law.*" (emphasis added) The court is not persuaded that the language of Section 6–903(c) constitutes an "unequivocal expression" of consent by the *State* to suit in federal court. A "governmental entity," as defined in the Idaho Tort Claims Act, includes not only the State and its agencies, but also "political subdivisions." Idaho Code § 6–902(3). "Political subdivisions" include counties, cities, and school districts.

Idaho Code § 6–902(2). Such entities have not traditionally been considered the "state" for eleventh amendment purposes, and thus are subject to suit in federal court. Accordingly, when an employee of a political subdivision is sued in federal court, the entity must provide for his defense, pursuant to Idaho Code § 6–903(c). However, the State or its "alter ego" is protected by the eleventh amendment. Section 6–903(f) makes it clear that such federally granted immunity cannot be "adversely affected" by any provision of the Idaho Tort Claims Act.

case of a judgment, the State treasury is ultimately affected.

It also appears that Dunn is being sued only in his official capacity as Director of the Department of Water Resources. The Supreme Court in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1986), held that a suit against an official in his official capacity was actually a suit against the state. In plaintiffs' response brief to the Motion for Summary Judgment by the State, it is argued that the Director acted outside the scope of his authority. However, plaintiffs have failed to present any facts indicating that the Director acted beyond the scope of his authority when he allegedly authorized or supervised the construction of the canal.[2]

## IV. DEFENDANTS CASSIA COUNTY AND COMMISSIONERS' MOTION TO DISMISS

The county defendants set forth several alternative grounds why plaintiffs' complaint should be dismissed as to them. Foremost is: (1) eleventh amendment immunity; and (2) "discretionary function" immunity under the Idaho Tort Claims Act.

### A. *Eleventh Amendment Immunity*

The defendants argue that, in the instant case, they are immune from suit because they were performing governmental activities under the direction of and with the concurrence of the State of Idaho. It is argued that, for purposes of this suit, they are merely an "alter ego" of the State.

**2.** It is also important to note that Idaho Code § 42–1717 appears to grant absolute immunity to the State, the Director of the Department, and the Department itself for any claim for damages arising out of the supervision, maintenance, operation and inspection of dams and reservoirs. Thus, even if this court were to find that the State and its employees were not immune from suit in this court under the eleventh amendment, there would likely be a bar under the state statute for any state claims brought against these defendants.

**3.** The county defendants also argue that they are immune from suit under the eleventh amendment because the activity which gave rise to the instant lawsuit was strictly governmental

█ The general rule is that the eleventh amendment does not apply to counties and other municipal corporations. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). However, the Supreme Court has recognized that when relief obtained against a county or its officials runs against the state, the amendment applies. *Id.* at 123 n. 34, 104 S.Ct. at 920 n. 34. Applying the factors considered in addressing the state defendants' claim of eleventh amendment immunity, the court finds that the county defendants fall outside of the scope of the amendment.

Cassia County is a body politic and corporate. Idaho Code § 31–601. It can sue and be sued, purchase and hold lands, make contracts, and levy and collect taxes. Idaho Code § 30–604. The county is also empowered to pass ordinances. Idaho Code § 31–714. The court has considered these powers as characteristic of an "independent political subdivision[ ], not of dependent arms of the [state]." *Morrison-Knudsen Co. v. Massachusetts Bay Transportation Authority*, 573 F.Supp. at 705. Most importantly, any money judgment that would ultimately be rendered against the county defendants in this case would not run against the State. Idaho Code §§ 31–606 and 31–810 provide that the county, at the direction of its commissioners, must pay money judgments out of the *county treasury*. Accordingly, the county cannot assert eleventh amendment immunity.[3]

in nature and at the direction of the state. The record before the court does not support this claim. The suit against the defendants arises from the adoption of a local county ordinance, enacted for the purpose of protecting the residents of Cassia County. These activities are more appropriately characterized as proprietary in nature. And, while plaintiffs state in their Complaint that the county commissioners acted under the direction of the state, there have been no facts set forth to support such a claim. The ordinance which is the subject of this litigation indicates that the county commissioners sought advice from the United States government and private citizens before enacting the ordinance. There is nothing from the language of the ordinance to indicate that the state or one of its

B. *"Discretionary Function" Immunity Under Idaho Tort Claims Act*

The county defendants also argue that they are immune from suit under the "discretionary function" exception to the Idaho Tort Claims Act. Idaho Code § 6–904(1). Under Idaho Code § 6–904(1), no liability is imposed "based upon the exercise or performance or the failure to exercise or perform a *discretionary function* or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." (emphasis added)

In the recent opinion of *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986), the Idaho Supreme Court had an opportunity to clarify the meaning of Idaho Code Section 6–904(1). In that decision, the Idaho Supreme Court set forth the "planning/operational" test for determining whether a party is immune from suit under Idaho Code § 6–904(1). Under this test a party is immune from suit for planning activities. These are activities which involve the establishment of plans, specifications and schedules by the governmental entity, and necessarily involve policy judgment and decision making. On the other hand, operational activities—those activities which involve the *implementation* of statutory and regulatory policy—are not immunized and must be performed with ordinary care. *Id.*, 723 P.2d at 773–74.

The distinction between the two elements of the test was clearly set forth in the *Bloom* opinion, where the Idaho Supreme Court, referring to the case of *Downs v. United States*, 522 F.2d 990, 997 (6th Cir. 1975), stated:

> For example, when the FBI established its policy for dealing with hijackings in its handbook, it was conducting a *planning activity* involving policy formulation, for which the government was immune under the discretionary function clause even if its policy was negligently set; however, when FBI agents applied that policy to an actual hijacking, those agents were carrying out *operational activities*, for which the government is

immune under the first clause of the exception so long as the agents used due (or ordinary) care.

*Sterling v. Bloom*, 723 P.2d at 774 (emphasis added).

■ In the instant case, plaintiffs have alleged that the county defendants acted unlawfully when, following adoption of the emergency ordinance, the defendants "entered upon plaintiffs' property, appropriated the same to the use of the County, and exceeded the authority granted by said ordinance by damaging and destroying Plaintiffs' property...." Amended Complaint, filed October 8, 1986, at 3. These allegations, taken as true, show that defendants failed to act with ordinary care in the *implementation* of the local ordinance. Such activity is not subject to immunity under Idaho Code § 6–904(1).

■ The court notes, however, that in Count I, paragraph IX, of plaintiffs' Amended Complaint, it is alleged that defendants acted negligently because they knew or should have known that an escape route for any overflow from the Oakley dam would be unsafe and inadequate, and that the defendants acted negligently by not taking measures to remedy the danger of overflow from the Oakley dam in the early spring of 1984. These allegations in plaintiffs' Amended Complaint go to negligence at the planning stage. The defendants cannot be held liable for the *decision* to enact an ordinance providing for an escape route from the Oakley dam, nor can they be held liable for their *decision* to wait until May of 1984 to enact such an ordinance. This is true even if such policy decisions were negligently made. *Sterling v. Bloom*, 723 P.2d at 776; *see also Jones v. City of St. Maries*, 111 Idaho 733, 727 P.2d 1161, 1164–65 (1986); *Lewis v. Estate of Smith*, 111 Idaho 755, 727 P.2d 1183, 1185–86 (1986).

C. *Other Defenses*

1. *Statute of limitations.*

■ The county argues that there is some question as to the statute of limita-

agencies was actively involved in the adoption and implementation of the ordinance.

tion period that should be applied in this action. Idaho Code § 6–911, as amended in March 1985, provides that every claim against a governmental entity shall be barred unless it is brought within two years after the claim arose. Because the cause of action in this case arose in 1984, and claim was not filed in this court until September of 1986, it is argued that the claim should be barred. The court does not agree. It is clear, under applicable Idaho law, that the statute of limitations in effect when the right of action is deemed to accrue, defines the appropriate statutory period. *Stoner v. Carr,* 97 Idaho 641, 550 P.2d 259 (1976). At the time the present cause of action arose, Idaho Code § 6–911 provided that claim against a governmental entity was barred unless an action was brought within two years *after a claim* was filed with the governmental entity. In this case, notice of claim was filed against the defendants on September 10, 1984, and the action was filed in this court on September 5, 1986, less than two years after notice of claim was filed.

### 2. *Abstention.*

■ The court does not believe that this is an appropriate action for application of the abstention doctrine. Plaintiffs' complaint, in substance, is a basic tort action for damage and destruction to personal property. There does not appear to the court to be any unsettled questions of state law, there are currently no parallel state proceedings, nor would there be any interference with state administrative or regulatory matters that would require this court to defer to the state courts. As the Supreme Court has noted, "abstention from the exercise of federal jurisdiction is the *exception,* not the rule." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (emphasis added).

### 3. *Public necessity.*

Defendants also argue that their actions are immune from suit under the doctrine of public necessity. Under this doctrine, a party may destroy or damage private property without liability if such action is necessary to avert a public calamity. Restatement (Second) of Torts § 196 (1965). However, comment g to Section 196 provides that this privilege may be abrogated by statute.

The State of Idaho has adopted a statutory counterpart to the common law doctrine of public necessity. The State Disaster Preparedness Act, Idaho Code § 46–1001, *et seq.,* provides immunity from liability for governmental entities and employees "engaged in ... disaster relief activities, acting under a declaration by proper authority...." Idaho Code § 46–1017. Idaho Code § 46–1011 provides that, "[a] local disaster emergency may be declared only by a mayor or chairman of the county commissioners within their respective political subdivisions." Upon initial review of the ordinance in this case, it appeared to the court that the county defendants were immune from suit for property damage pursuant to Idaho Code § 46–1017. The court was persuaded by the fact that the ordinance was entitled "An Ordinance *Declaring* an *Emergency,*" (emphasis added) and because the emergency ordinance was signed by the chairman of the Cassia County Commissioners as required by Idaho Code § 46–1011. However, the defendants did not raise this defense in their pleadings and at the time of oral argument provided no evidence to the court indicating that the county had indeed complied with the Disaster Preparedness Act when adopting Ordinance No. 84–1. Absent such a showing, the court will refrain from ruling on the effect of the Disaster Preparedness Act to the instant action.

### V. FEDERAL CLAIM

Unlike the common law tort claims under state law found in Counts I, III, IV and V of the Amended Complaint, Count II of plaintiff's complaint seeks just compensation for the taking of property for public use in violation of the fifth and fourteenth amendments to the United States Constitution. Pursuant to the recent United States

Supreme Court opinion of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the court finds this claim to be premature. In *Williamson*, the Court set forth the following analysis:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.... Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a " 'reasonable, certain and adequate provision for obtaining compensation' " exist[s] at the time of the taking.... If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government for a taking." ... Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Id.*, at 194–195, 105 S.Ct. at 3121, 87 L.Ed.2d at 143–44 (citations omitted).

In *Williamson*, the Court found the petitioners' claim for just compensation premature because the State of Tennessee provided a statutory scheme for a property owner to bring an inverse condemnation action to obtain just compensation for an alleged taking of property. *Id.*, at 196, 105 S.Ct. at 3122, 87 L.Ed.2d at 145.

 The courts of Idaho have long recognized the right of a property owner to bring an inverse condemnation action against a party to recover just compensation for an appropriation of land. *Renninger v. State*, 70 Idaho 170, 213 P.2d 911 (1950); *State ex rel Symms v. Nelson Sand and Gravel, Inc.*, 93 Idaho 574, 468 P.2d 306 (1970); and *Rueth v. State*, 100 Idaho 203, 596 P.2d 75 (1979). The Idaho Supreme Court has recognized that "an action in inverse condemnation is ... a proceeding in eminent domain and the only

difference is the reversed alignment of the parties." *Id.* at 217, 596 P.2d 75. Accordingly, the plaintiffs may bring an action in inverse condemnation in the state district court for the county in which the property is situated (Idaho Code § 7–706) and, if a taking is found, receive payment for damages as a result of the taking pursuant to Idaho Code §§ 7–710 and 7–711. Until plaintiffs have availed themselves of the eminent domain and inverse condemnation procedures of the state court, their taking claim is premature.

### VI. ORDER

Based upon the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that Defendants State of Idaho, Department of Water Resources, and Kenneth Dunn's Motion for Summary Judgment should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants Cassia County and county commissioners' motion to dismiss should be, and is hereby, GRANTED IN PART and DENIED IN PART. Paragraphs IX and X of Count I of plaintiffs' Amended Complaint should be, and are hereby, DISMISSED. Count II of plaintiffs' Amended Complaint should be, and is hereby, DISMISSED as not ripe for adjudication. The motion to dismiss as to Counts I (paragraphs I through VIII), III, IV and V should be, and are hereby, DENIED.