**Robert W. HALL, an individual, Plaintiff-Appellant,**

v.

**STATE OF HAWAII, a state of the United States, et al., Defendants-Appellees.**

No. 85–1698.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1986.

Decided June 10, 1986.

Robert W. Hall, Honolulu, Hawaii, in pro. per.

Steven S. Michaels, Deputy Atty. Gen., Honolulu, Hawaii, for defendants-appellees.

Before SNEED, ANDERSON, and POOLE, Circuit Judges.

SNEED, Circuit Judge:

Robert W. Hall appeals from the district court's entry of summary judgment against him in his suit against the University of Hawaii and various others. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Hall, a white male, applied for admission to the Richardson School of Law (Law School) at the University of Hawaii. He had a grade point average (GPA) of 3.82 and had scored a 25 out of 50 on the Law School Admissions Test (LSAT).

The Law School evaluated applications on the basis of three criteria: (1) the applicant's score on the LSAT; (2) the applicant's undergraduate GPA; and (3) the applicant's personal profile. All unsuccessful applicants were also considered for admission to the Law School's "pre-admission program." This program was designed to provide special opportunities for members of disadvantaged groups underrepresented in the Hawaii Bar. Students admitted to the program could gain admission to the law school by demonstrating their ability to do law school work.

The Law School rejected Hall's regular application on the ground that his LSAT score placed him below the cut-off point for acceptable applicants. Because nothing in his application suggested that he had overcome any sort of disadvantage, the Law School also chose not to accept him for the pre-admission program.

Hall filed this pro se suit on September 4, 1984. His amended complaint named as defendants, among others, the State of Hawaii, the Hawaii Supreme Court, each of the state supreme court justices, the University of Hawaii, the Law School, the president of the university, the chancellor, members of the university's board of regents, and members of the Law School's admissions committee. Hall alleged violations of both federal and state law. Chief among his many claims were that the university had discriminated against him on the basis of race, that it relied too much on the LSAT in selecting law students, and that the state, by limiting bar membership to graduates from A.B.A. accredited law schools, had violated his constitutional right to engage in the profession of his choice.

The defendants responded by filing the affidavit of Professor Williamson Chang, chairman of the admissions committee of the Law School, and moving for dismissal or, in the alternative, summary judgment. Hall responded with a request to discover virtually all law school memoranda relating in any way to the admissions process, but the defendants sought, and obtained, an *ex parte* protective order. Hall tried unsuccessfully to have the order set aside and then, asserting that he needed additional time to discover evidence of the university's discriminatory admissions policy, filed two affidavits opposing the defendants' motion.

On January 14, 1985, Hall moved for voluntary dismissal of his state law claims if the Eleventh Amendment actually barred

those claims. At oral argument the following day, the district court found that, for purposes of the Eleventh Amendment, all the named defendants were state officials and were therefore immune from a federal suit to enforce alleged state-created rights. The district court accordingly dismissed the state law claims and, subsequently, entered summary judgment for the defendants on Hall's federal claims. Hall appeals.

## II.
## DISCUSSION

### A. *Summary Judgment*

Hall contends that the district court erred in entering summary judgment because there were unresolved issues of material fact and because he needed additional discovery to expose the Law School's discriminatory policies.

We review de novo district court decisions regarding summary judgment. *Ladd v. Law & Technology Press*, 762 F.2d 809, 811 (9th Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986). That is, we "review all the evidence in the light most favorable to the non-moving party and determine whether the trial court correctly determined that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law." *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir.1985).

The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). At the same time, the district court may refuse or continue a party's application for summary judgment if the opposing party needs to discover essential facts. *See* Fed.R.Civ.P. 56(f).

It is on this latter provision of Rule 56 that Hall attempts to stand. In effect, he asserts that if his discovery requests were allowed he would be able to unearth facts that would reveal that there exists a genuine dispute as to material facts. That is not enough. Hall must make more clear what information he is seeking and how it would preclude summary judgment. Under these circumstances, the district court was justified in denying Hall the discovery he sought. The district court was also correct in determining that the case was susceptible of summary disposition. We wholeheartedly agree with the court's conclusion that Hall's federal claims entirely lacked a foundation.

### B. *The State Law Claims*

Hall contends that the district court erred in accepting his conditional withdrawal of his state law claims because the court did not *expressly* find that the Eleventh Amendment barred those claims. We find no merit in this contention because the claims deserved involuntary dismissal in any event.

Absent a state's unequivocal consent, the Eleventh Amendment bars a federal court from entertaining a suit against that state, or one of its agencies or departments, based on state law. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99–100, 104–06, 104 S.Ct. 900, 907, 910–11, 79 L.Ed.2d 67 (1984). No such consent appears in either the Hawaii Constitution or the state statutes under which Hall brought suit. This determination does not end the matter, however, because Hall challenges the district court's finding that all the named defendants are shielded by the state's immunity.

Little question exists with respect to the University of Hawaii, the Law School, and the board of regents. They are clearly immune as agencies of the state. *See, e.g.*, Hawaii Rev.Stat. §§ 304–1 to 304–6, 304–74 (1976 & Supp.1984). As for the state supreme court justices, they are shielded by absolute judicial immunity in any event. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982).

Regarding the various university personnel named in Hall's complaint, however, the issues are slightly more complex. The Supreme Court held in the *Pennhurst* case that state officials share the state's sovereign immunity against a federal suit based on state law whenever "the relief sought and ordered has an impact directly on the State itself." *See* 465 U.S. at 117, 104 S.Ct. at 917. That test is met in this case. The plaintiff is using various university personnel as a means of securing definite action on the part of an agency of the state. Hall's purpose is, and always has been, to challenge the Law School's official admissions policy. The suit is against the university employees in name only, and the federal courts cannot entertain it.

AFFIRMED.