**852**

Earle A. PARTINGTON,
Plaintiff-Appellant,

v.

Joseph GEDAN & Howard T. Chang,
Defendants-Appellees.

Jeffrey LAU & Earle A. Partington,
Plaintiffs-Appellants,

v.

Herman T.F. LUM, Edward H. Nakamura, Frank D. Padgett, Yoshimi Hayashi, James H. Wakatsuki, Jeremy T. Harrison, Charlene M. Norris, Joseph M. Gedan & Mark J. Bennett, Defendants-Appellees.

Nos. 90–15942, 91–15194.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1991.

Decided April 14, 1992.

As Amended on Denial of Rehearing and
Rehearing En Banc
July 2, 1992.

See also 923 F.2d 686.

Earle A. Partington, Partington & Foley, and Karen A. Essene, Honolulu, Hawaii, for plaintiff-appellant Earle A. Partington.

Earle A. Partington, Partington & Foley, Honolulu, Hawaii, for plaintiff-appellant Jeffrey J. Lau.

Paul Alston, Peter Hsieh, Special Deputy Attys. Gen., Honolulu, Hawaii, for defendants-appellees Herman T. Lum, Edward H. Nakamura, Frank D. Padgett, Yoshimi Hayashi, James H. Wakatsuki, and Jeremy T. Harrison.

Stanley E. Levin, Special Deputy Atty. Gen., Honolulu, Hawaii, for defendant-appellee Charlene Norris.

Steven S. Michaels, Girard D. Lau, Deputy Attys. Gen., Honolulu, Hawaii, for defendants-appellees Joseph M. Gedan, Howard T. Chang, and Mark J. Bennett.

Before: ALARCON, D.W. NELSON, and CANBY, Circuit Judges.

D.W. NELSON, Circuit Judge:

In 1985, plaintiff-appellant Earle Partington served as court-appointed counsel to criminal defendant Clifford Clarke. After his conviction in trial court, Clarke appealed. On appeal, the Hawaii Supreme Court found, *sua sponte*, that Clarke had received ineffective assistance of counsel and reversed his conviction. The Hawaii Supreme Court finding of ineffectiveness, which triggered disciplinary proceedings against Partington, and Partington's argument that he has never been permitted to defend against that finding, are at the center of this complex case. Before this panel, Partington appeals two district court decisions: the district court's denial of his Fed.R.Civ.P. 60(b) motion to vacate judgment in the original federal court case, *Partington v. Gedan,* and its dismissal of his complaint in a related case, *Lau v. Lum.*

Despite the many arguments Partington advances, we find that the causes of action underlying the two cases are simply nonjusticiable in federal court for a wide variety of reasons. Some claims are moot, others are barred by various immunity doctrines, others implicate the *Rooker–Feldman* doctrine, another is subject to *Younger* abstention, and yet others simply fail to identify a federal constitutional deprivation. Accordingly, we affirm the district court's decisions in both *Partington v. Gedan* and *Lau v. Lum.*

## FACTS [1]

### A. Partington v. Gedan

In 1985, plaintiff-appellant Earle Partington served as defense counsel to Clifford Clarke. Clarke was charged with the abuse and murder of his girlfriend's daughter. During Clarke's highly publicized state trial, Partington made several unconventional strategic decisions, including a refusal to cross-examine the victim's mother and a refusal to make a closing argument before the jury. Clarke was convicted; subsequently, he appealed to the Hawaii Supreme Court. Partington represented him on appeal. At no time did Clarke challenge his conviction on the ground that he received ineffective assistance of counsel.

During the pendency of the appeal, the presiding trial court judge filed a letter with the Office of Disciplinary Counsel of the Hawaii Supreme Court (ODC). In this letter, the judge stated his belief that Partington had given Clarke ineffective assistance of counsel, and that he had done so deliberately so as to create grounds for reversal on appeal. Partington filed a motion with the Hawaii Supreme Court requesting that it remand the case to the trial court to explore the trial judge's complaint. The Hawaii Supreme Court denied his motion, but ultimately reversed Clarke's conviction because it found, *sua sponte,* that Clarke had received ineffective assistance of counsel. An unpublished opinion, *State v. Clarke,* was entered to that effect.

As a consequence of *State v. Clarke,* the ODC commenced a Hawaii Supreme Court

---

**1.** Much of the factual and procedural history laid out below is discussed at length in this court's opinion in *Partington v. Gedan,* 880 F.2d 116 (9th Cir.1989). This history is repeated here as necessary to understand certain events that have taken place since that decision.

Rule 13 disciplinary proceeding against Partington. If a conviction is reversed on the ground that the defendant received ineffective assistance of counsel, Rule 13 requires that the Hawaii Supreme Court appoint a Special Master "to determine whether action against the counsel alleged to have been incompetent is warranted." Haw.Sup.Ct.R. 13. The court appointed Joseph Gedan to serve as Special Master. At that time, Partington filed two motions with the Hawaii Supreme Court asking for a clarification of the relationship between its opinion in *State v. Clarke* and the Rule 13 proceedings. Specifically, Partington inquired whether the Rule 13 proceedings would be conducted de novo, allowing him to put on evidence and advance arguments about his trial strategy that he had not had an opportunity to present before the Hawaii Supreme Court decided *State v. Clarke*. Both motions were denied.

In March of 1987, Partington filed suit in federal district court seeking to enjoin the Rule 13 proceeding. He alleged that because the Hawaii Supreme Court had already decided the question of his conduct in *State v. Clarke*, the Rule 13 proceedings would not provide him with the chance to present his federal constitutional claims before an impartial tribunal. The district court abstained, invoking the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). On appeal, this court approved that abstention in *Partington v. Gedan*, 880 F.2d 116 (9th Cir.1989) (*Partington I*). In deciding *Partington I*, we relied in part on an April 1987 letter from Hawaii Supreme Court Justices Lum and Padgett to Partington stating that the Rule 13 proceedings would in fact give Partington an opportunity to present evidence and legal arguments defending his trial tactics. Special Master Gedan also represented to Partington that the proceedings would consider de novo his effectiveness as counsel.

After we issued our decision in *Partington I* but before we considered Partington's petition for rehearing, the Hawaii Supreme Court decided *Matsuo v. State*, 70 Haw. 573, 778 P.2d 332 (1989). In *Matsuo*, a petitioner convicted of trying to escape from prison appealed his conviction on the ground that his attorney rendered ineffective assistance of counsel. The Hawaii Supreme Court, finding "the record ... void as to the reasons for trial counsel's decision[s]," remanded the case to the trial court to permit the attorney to explain the decisions in question. *Id.* at 335. The court found that it would be "unfair to implement a Rule 13 proceeding against trial counsel without first giving him an opportunity to explain his side of the story." *Id.* Arguing that under *Matsuo* the Hawaii Supreme Court's opinion in *State v. Clarke* violated his federal constitutional rights, Partington brought the case to our attention. We denied his petition for rehearing.

Partington then filed a motion with the Hawaii Supreme Court to dismiss the Rule 13 proceedings in light of *Matsuo;* his motion was denied. A motion that the justices who had presided in *State v. Clarke* recuse themselves from considering any motion he filed in conjunction with the Rule 13 proceedings was also denied. Partington then filed a motion asking the Hawaii Supreme Court to declare whether, in light of *Matsuo*, the Rule 13 proceeding would be conducted de novo; this motion, as well as a second motion requesting recusal, was denied in its entirety.

Partington then returned to the district court and filed a Fed.R.Civ.P. 60(b) motion to vacate the judgment in *Partington v. Gedan*.[2] On July 3, 1990, the district court denied his motion, finding that nothing had changed since the date Partington filed his original suit. Partington appeals that denial to this court.

On July 31, 1990, Special Master Gedan determined that Partington had indeed rendered ineffective assistance of counsel to Clarke. After Gedan's decision, the justices who had participated in the Clarke appeal recused themselves, and on September 24, 1990, a specially constituted Hawaii Supreme Court reviewed Gedan's decision. Rejecting's Gedan's decision on the ground

---

**2.** Partington also filed a motion for summary judgment at that time.

that Gedan had exceeded his authority by conducting a de novo investigation, the court entered an order stating that its original opinion in *State v. Clarke* was the final adjudication of the question of Partington's misconduct. The court then dismissed the Rule 13 proceeding with prejudice. The court also stated that Partington was not in need of corrective action, and that Rule 13 was not unconstitutional.

In its order, the court stated that it might be appropriate for the ODC to institute a Hawaii Supreme Court Rule 2 proceeding against Partington. Under Rule 2, the ODC is authorized generally to investigate allegations of ethical violations. Unlike Rule 13, Rule 2 explicitly permits attorneys to put on evidence and otherwise defend their actions. Investigators, in turn, have the option of determining that an ethics violation did not occur. In July 1991, the ODC instituted formal Rule 2 proceedings against Partington.

## B. Lau v. Lum

In April of 1989, Partington was serving as defense counsel to Jeffrey Lau in a criminal appeal pending before the Hawaii Supreme Court. Partington filed a motion with the court asking for permission to withdraw as Lau's counsel, stating that he could not draft an adequate opening statement within the period designated under an earlier court order. On behalf of the court, Justice Padgett stated that Partington's inability to meet the briefing schedule was caused by Partington's own failure to file a timely motion to adjust the schedule for docketing the appeal. The court gave Partington additional days to prepare his opening statement, but imposed a fifty-dollar sanction on him. The fine was payable to the "Discretionary Fund" of the Dean of the University of Hawaii Law School, the beneficiary of all such fines.

Partington filed several motions protesting the fine, arguing that he had been singled out for sanctions for a practice that was common among Hawaii attorneys, and requesting an evidentiary hearing on the question whether the imposition of the fine was unconstitutional. The Hawaii Su-

preme Court responded with an order denying the relief requested. Partington paid the fine under protest to the Discretionary Fund.

Partington then filed an action in district court under 42 U.S.C. § 1983. His complaint alleged that the Hawaii Supreme Court justices and the dean of the law school had violated several of his constitutional rights by levying and collecting the fine. He sought declaratory relief, an injunction to compel the return of the fifty dollars, and an award of fees and costs. Partington then filed an amended complaint in which he claimed 1) that his due process rights had been violated by the finding of ineffectiveness in *State v. Clarke*, 2) that Justice Padgett had violated his constitutional rights when, during the course of a separate trial (*State v. Denton*) he expressed his belief that Partington was rendering ineffective assistance of counsel, and 3) that the Hawaii Supreme Court was impairing his constitutional rights under the First Amendment and the Sixth Amendment. Partington requested additional relief, including declaratory and injunctive orders concerning the propriety of Partington's conduct as defense counsel in *State v. Clarke*, *State v. Lau*, and *State v. Denton*.

Partington then filed a second amended complaint in which he named the Rule 13 Special Master, the Rule 13 special prosecutor, and the ODC attorney conducting the Rule 2 investigation as additional defendants. He added claims requesting declaratory and injunctive relief against the ongoing Rule 13 proceeding, and injunctive relief preventing the State from "requiring him to violate the attorney-client privilege in response to Rule 2 inquiries."

While *Lau v. Lum* was pending, the specially constituted Hawaii Supreme Court dismissed the Rule 13 proceedings, as discussed above. Partington then moved the district court for leave to file a third amended complaint in which he hoped to include new claims against Justices Lum and Padgett and Special Master Gedan for their "misrepresentation and fraud" based on Lum and Padgett's 1987 letter and Gedan's assurances stating that the Rule 13

proceeding would be conducted de novo. He also filed a motion for sanctions under Fed.R.Civ.P. 11, arguing that the defendants had made frivolous affirmative defenses as well as misrepresentations regarding the law and facts concerning the imposition of the fifty dollar fine.

Shortly after Partington sought leave to file, the district court dismissed his second amended complaint and denied the requests for injunctive relief contained therein. The magistrate denied his motion to file a third amended complaint, and the district court affirmed this denial, primarily because it found that the new claims were barred by the defendants' absolute judicial immunity. Finally, the district court denied the Rule 11 motion.

Partington now appeals the district court's dismissal of his second amended complaint and denial of the requests for injunctive relief contained therein, its denial of his motion for leave to file an amended complaint, and its denial of his motion for Rule 11 sanctions.

## DISCUSSION

The two cases before us were consolidated for the purposes of this appeal, but we will consider and discuss each of them separately.

### I. Partington v. Gedan

#### A. *Standard of Review*

A denial of a motion for relief from judgment pursuant to Rule 60(b) is reviewed for an abuse of discretion. *Thompson v.*

*Housing Authority of the City of Los Angeles,* 782 F.2d 829, 832 (9th Cir.), *cert. denied,* 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986).

#### B. *Analysis*

Partington argues that the district court should have granted his 60(b) motion because the Hawaii Supreme Court decided *Matsuo* after the district court rendered its original decision. According to Partington, *Matsuo* represented sufficiently new information or law such that the district court's original disposition should be vacated. In denying his motion, the district court found that Partington had not presented any new evidence or law that was not before the Ninth Circuit when it denied his petition for rehearing. The district court concluded that in light of the Ninth Circuit's *Partington I* opinion and its subsequent refusal to rehear the case, it was bound by the "law of the case."

In resolving this issue, we need not reach the question whether our decision in *Partington I* was binding on the district court for the purposes of Partington's Rule 60(b) motion. Whether or not *Matsuo* represented "new law," nothing remains of the original suit appealed in *Partington I.* In that original suit, the district court had before it Partington's request for injunctive relief from the Rule 13 proceedings. Since the filing of that original suit, however, the Rule 13 proceedings have come to a close. Therefore, a request for injunctive relief from those proceedings is now a moot issue.[3] Under these circumstances, we find no reason to disturb the district court's judgment with respect to Partington's Rule 60(b) motion.[4]

---

**3.** On appeal in *Partington I,* Partington had also requested a declaratory judgment that the Rule 13 proceedings were unconstitutional as applied to him. However, we explicitly noted that Partington had not raised that particular request before the district court, and therefore declined to consider it. 880 F.2d at 129. Therefore, all the district court had before it was the request for injunctive relief.

**4.** Partington advances a second argument why the district court erred in denying his 60(b) motion. He argues that the district court erred in holding that the *Partington I* panel's determination that "the attorney-client issue turns on a question of state law," 880 F.2d at 123, was not a "clearly erroneous ruling" that would work a "manifest injustice" on Partington. Partington does not explain what gives district courts the power to declare the decisions of appellate panels "clearly erroneous." In any event, this argument does not change the fact that his motion is now moot. Moreover, we reject this argument on the merits, as discussed below.

## II. Lau v. Lum

### A. *Dismissal of Complaint*

In his second amended complaint, Partington advanced ten "claims for relief." After considering and discussing each claim, the district court dismissed the entire complaint. Partington's claims for relief are as follows:

*Claim 1:* A declaratory judgment that the defendants violated Partington's constitutional rights by making the finding of ineffective assistance of counsel in *State v. Clarke;*

*Claim 2:* A declaratory judgment that the defendants violated Partington's rights by imposing the fifty-dollar sanction in *Lau v. Lum;*

*Claim 3:* A declaratory judgment that defendant Padgett violated Partington's constitutional rights by accusing him of giving ineffective assistance of counsel in *State v. Denton;*

*Claim 4:* A declaratory judgment that the defendants are violating Partington's constitutional rights "by refusing to provide him with an allegation or charge and/or a settled or established procedure in the Rule 13 proceeding";

*Claim 5:* A declaratory judgment that the defendants are violating Partington's rights by their "continuing course of conduct of sanction, accusation, and findings" combined with their "failure to utilize in good faith" disciplinary proceedings pursuant to Rule 13 and Rule 2;

*Claim 6:* A declaratory judgment that if Partington conducts himself as he has in the past, "it must be assumed that" he is rendering effective assistance of counsel;

*Claim 7:* An order directing the return of the fifty dollars;

*Claim 8:* An injunction against further Rule 13 proceedings;

*Claim 9:* An injunction preventing the ODC from requiring Partington to violate the attorney-client privilege in response to Rule 2 inquiries; and

*Claim 10:* An injunction restraining the defendants from "sanctioning, accusing, or making· findings of unprofessional conduct" without affording Partington "prior notice and an opportunity to be heard."

██ Because the Rule 13 proceedings have come to a close, Partington's Claims 4 and 8 are now moot; we need not discuss those claims.[5] Because Partington does not raise a challenge to the district court's disposition of Claim 3, we also need not discuss Claim 3.[6] We have considered each remaining claim and conclude that the district court properly dismissed all of them. Accordingly, we affirm the district court's dismissal of the complaint. We discuss each claim below.

### Claims 1 & 5

#### 1. *Res Judicata*

██ The district court held that since Claims 1 and 5 were duplicative of the claims and causes of action raised in *Partington I,* they were barred by res judicata and could not be considered. We find the district court's conclusion on this issue erroneous.

"[A] prior judgment is res judicata only as to suits involving the same cause of action." *Lawlor v. National Screen Service,* 349 U.S. 322, 329, 75 S.Ct. 865, 869, 99 L.Ed. 1122 (1955). In determining whether a particular action is barred because of res judicata, we ordinarily examine:

(1) Whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of

---

**5.** Partington apparently concedes this point. Appellant's Opening Brief at 19, note 25.

**6.** Nor could he raise such a challenge. The district court held that this action was barred because of Hawaii Supreme Court Justice Padgett's judicial immunity. Although immunity would not prevent a suit for declaratory relief, plaintiffs must allege more than mere reputational damage to maintain a suit under Section

1983. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Even if we assume that Padgett's reprimand of Partington caused Partington some reputational damage, Partington cannot bring a Section 1983 suit because he has failed to allege any deprivation of constitutional magnitude stemming from that courtroom comment.

the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201–1202 (9th Cir.) (citation omitted), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982). For the purposes of this case, however, we need not engage in this inquiry because an abstention on *Younger* grounds simply does not establish any "rights or interests."

■ A decision to abstain for *Younger* reasons is not a decision on the merits of a claim. *World Famous Drinking Emporium Inc. v. City of Tempe,* 820 F.2d 1079, 1083 (9th Cir.1987). In approving the district court's decision to abstain, we did not consider the merits of Partington's constitutional claims. *Partington I* thus established no "rights or interests" that could be "destroyed or impaired" by the subsequent actions in *Lau v. Lum.* To the contrary: because *Partington I* dealt only with whether *Younger* abstention was appropriate in response to a request to enjoin an ongoing state proceeding, it established only that the federal district court properly declined to enjoin state disciplinary hearings.[7] That decision cannot be res judicata as to the claims advanced in *Lau v. Lum.*

### 2. Failure to State a Claim: Claim 1

■ Having concluded that Partington's actions are not barred by res judicata, we turn first to the question whether Partington's Claim 1 states a claim under 42 U.S.C. § 1983.[8] Although the district court did not address this question, we may affirm a district court opinion on any basis finding support in the record. *Marino v. Vasquez,* 812 F.2d 499, 508 (9th Cir.1987); *Hatch v. Reliance Ins. Co.,* 758 F.2d 409,

414 (9th Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985).

Under Section 1983, a would be litigant must allege (1) that he or she has suffered a "deprivation of ... rights, privileges, or immunities secured by the Constitution and laws," and (2) that the deprivation was caused by a person acting under color of law. *See* 42 U.S.C. § 1983. Because we conclude that Claim 1 fails to meet the first prong of this test, we find it does not state a claim under section 1983.

Partington argues that the Hawaii Supreme Court violated his rights by making a finding of ineffective assistance of counsel in *State v. Clarke.* In so doing, however, Partington fails to specify which constitutional rights were violated and are actionable under section 1983. In reversing Clifford Clarke's conviction, the Hawaii Supreme Court did not deprive Partington of any liberty or property interest. The court placed no limit on Partington's ability to practice law. At most, Partington alleges only that his reputation within the legal community has suffered as a result of the court's decision. However, as the Supreme Court made clear in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), reputational damage alone simply does not constitute the sort of constitutional deprivation necessary to allege a violation of section 1983.

■ In *Paul v. Davis,* the police distributed to local merchants a list of "active shoplifters" bearing plaintiff Davis's name and photograph. Davis filed suit under section 1983. Although the plaintiff's employer had warned him that similar future behavior might cost him his job, he alleged no other harm. The Supreme Court, concluding that Davis could not bring a section 1983 suit, rejected the argument that "reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to

---

7. Although Partington did ask for declaratory relief for the first time on appeal, we explicitly declined to adjudicate that request. *See supra* note 3.

8. We note, as an initial matter, that because Claims 1 and 5 request declaratory relief, they

are not jurisdictionally barred despite the fact that the defendants enjoy absolute judicial and prosecutorial immunity. Immunity protects judges and their agents from suits involving *monetary* damages. *See Ashelman v. Pope,* 793 F.2d 1072, 1075 (9th Cir.1986) (en banc).

invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1160. In line with this principle, this circuit permits section 1983 suits only when the defamation which causes the reputational damage is accompanied by additional harm, usually loss of employment. *See, e.g., Fleming v. Dep't of Public Safety,* 837 F.2d 401, 408 (9th Cir.), *cert. denied,* 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988) (finding that reputational injury that delayed job offer by a few days was not a "cognizable injury" under section 1983); *Brady v. Gebbie,* 859 F.2d 1543, 1552–53 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989) (holding that employee stigmatized during the course of wrongful discharge alleged harm cognizable under section 1983).

Partington argues that *Miller v. Washington State Bar Ass'n,* 679 F.2d 1313 (9th Cir.1982), supports the idea that "damage to one's livelihood as an attorney" is cognizable under section 1983. In that case, attorney Miller received a private Letter of Admonition from the Washington State Bar after he published a poem critical of the Washington Supreme Court. The Letter of Admonition became a permanent part of Miller's record. As the state conceded, Miller "would be called upon to explain the presence of the admonition in his file in response to questions on applications for admission to the bars of other states, for judicial appointments, etc., relating to the disposition of any complaints filed against him." *Id.* at 1316. Miller sued under section 1983, alleging that the state bar had violated his First Amendment rights. The state bar responded that Miller was not "adversely affected" because the letter was private and did not revoke or suspend the appellant's right to practice law. *Id.* at 1316–17. Rejecting that argument, we concluded that Miller had stated a claim.

Partington's reliance on *Miller* is misplaced. First, unlike Miller, Partington has not alleged any concrete, tangible damage to his livelihood. Second, the case is inapposite for the simple reason that Miller claimed a First Amendment violation in addition to any reputational damage he may have suffered. In other words, Miller alleged a separate constitutional deprivation which independently was sufficient to sustain a section 1983 action. Partington, on the other hand, has not indicated that the Hawaii Supreme Court's statement in *State v. Clarke* deprived him of any constitutionally protected property or liberty interests or caused him any harm other than that allegedly done to his reputation. That allegation is not enough to sustain a section 1983 claim. Under the circumstances, the district court properly dismissed Claim 1.

### 3. *Younger Abstention: Claim 5*

■ In Claim 5, Partington sought a declaratory judgment from the district court that the defendants were violating his rights by their "continuing course of conduct of sanction, accusation, and findings" combined with their "failure to utilize in good faith" disciplinary proceedings pursuant to Rule 13 and Rule 2. The district court held that, to the extent that Claim 5 was not barred by res judicata, it was subject to *Younger* abstention. We agree.

■ Claim 5 is based in part on the Rule 2 disciplinary investigation. In that regard, it clearly seeks relief with respect to a pending state proceeding. The *Younger* doctrine precludes not only federal injunctive relief against pending state enforcement proceedings, but also declaratory proceedings. *Samuels v. Mackell,* 401 U.S. 66, 69–74, 91 S.Ct. 764, 766–69, 27 L.Ed.2d 688 (1971). It also applies to state bar disciplinary proceedings. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Thus, the district court rightly invoked *Younger* abstention.

■ By alleging that the state was not utilizing its disciplinary proceedings in "good faith," Partington appears to have been attempting to bring his request for declaratory relief within the "bad faith and harassment" exception to *Younger* abstention. *See Younger,* 401 U.S. at 47–49, 91 S.Ct. at 752–53. Partington's allegations, however, fall far short of establishing bad

faith of the sort sufficient to invoke that exception. There was no allegation of repeated harassment by enforcement authorities with no intention of securing a conclusive resolution by an administrative tribunal or the courts, *see id.*, or of pecuniary bias by the tribunal, *see Gibson v. Berryhill*, 411 U.S. 564, 578–79, 93 S.Ct. 1689, 1697–98, 36 L.Ed.2d 488 (1973). Partington has alleged no interference with his federal rights in connection with the Rule 2 proceedings that cannot be addressed in the course of the state proceedings, including direct appeals therefrom and review by certiorari in the Supreme Court of the United States. In short, the district court did not err in concluding that Claim 5 was subject to *Younger* abstention.

### Claims 6 & 10

Partington argues that the district court erred in dismissing Claims 6 and 10 because "a complaint cannot be dismissed on the basis of the particular relief prayed for, so long as some relief may be granted."[9] The record indicates that the district court properly dismissed Claims 6 and 10 for a lack of subject-matter jurisdiction. In refusing to grant the declaratory relief requested in Claim 6, the district court noted that Partington "had not suffered any actual or threatened injury concerning any future conduct." Article III of the Constitution requires that a would-be federal litigant allege some actual or threatened injury before a court can gain jurisdiction over the purported suit—the injury cannot exist in the abstract. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In asking the district court to judge his future conduct as an attorney, Partington fails to identify the injury that undergirds his standing to sue. At this stage, any ruling from a federal district court would be an advisory opinion, something federal courts cannot give. In the absence of some concrete threatened injury, Article III bars the relief requested in Claim 6.

Similarly, in refusing to grant the injunctive relief requested in Claim 10, the district court noted that Partington's request was "little more than a request for the Hawaii Supreme Court to comply with the rights of due process in the future." As such, Partington's complaint failed to articulate the likelihood that the Hawaii Supreme Court will mistreat Partington in the future—if, indeed, it has in the past. Past deprivation by itself is not enough to demonstrate the likelihood of future deprivations such that the requirements of Article III are met. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983); *Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). Without such a concrete likelihood, the case or controversy requirement cannot be met. Partington has failed to allege sufficient facts to demonstrate an appreciable likelihood that the Hawaii Supreme Court will do anything in the future to violate his rights. Therefore, the district court properly dismissed this claim for a lack of case or controversy.

### Claim 9

In denying Claim 9's request for injunctive relief, the district court found that Partington had not met his burden of proving a likelihood of success on the merits of his claim—that is, in demonstrating that he is foreclosed from disclosing confidential attorney-client communications in response to ODC inquiries.[10] Partington argues that because the attorney-client privilege is a part of a defendant's Sixth Amendment right to counsel, only Clarke can waive the privilege. Because Clarke has not waived the privilege, Partington

---

9. Partington also objects to the district court's dismissal of Lau as a party to the suit, on the ground that Partington had not requested any relief for Lau. Because we hold that the district court properly dismissed this portion of the complaint, we need not reach this challenge. Moreover, because the relief Partington requests is all nonmonetary (because of the defendants' judicial immunity), whether Lau remains a named party to the suit appears irrelevant.

10. The district court also based its decision on the alternate theory that abstention was required by *Younger*.

asserts that he cannot disclose any confidences to the ODC. The amicus briefs filed on Partington's behalf advance this argument as well.

In rejecting this argument, the district court relied on the *Partington I* court's analysis. In *Partington I*, we "interpret[ed] this argument to mean that Partington believes that Hawaii's interpretation of the attorney-client privilege imposes a procedural bar that effectively prevents him from testifying on the issue of ineffectiveness because he cannot fully present his trial strategy defense." 880 F.2d at 123. As we pointed out then, it is for Partington to demonstrate that Hawaii will interpret its own rules to conclude that revealing client confidences in the course of a disciplinary hearing is impermissible.

We agree with the district court that Partington has failed to meet his burden. Nothing in the record indicates that Hawaii would prevent Partington from presenting a complete defense. To the contrary, Hawaii provides that an attorney may violate the privilege under certain circumstances, such as when "required by law" or when "necessary to ... defend himself ... against accusations of wrongful conduct." [11] While none of the exceptions explicitly sanctions the violation of the privilege during the course of disciplinary hearings, in the absence of evidence to the contrary, "[f]ederal courts 'cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims.'" *Partington I*, 880 F.2d at 123 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987)).[12]

■ On this appeal, Partington advances a second argument: that even if Hawaii permits him to reveal the confidences, he still may not do so because to do so would violate Clarke's Sixth Amendment rights. Although this is an interesting and novel argument, we cannot agree.

■ As we have made clear, "[s]tanding alone, the attorney-client privilege is merely a rule of evidence; it has not yet been held a constitutional right." *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986) (citations omitted). Accordingly, the scope of the privilege is a function of state law, not federal constitutional law, as Partington argues. A violation of the attorney-client privilege implicates the Sixth Amendment right to counsel only under certain circumstances—specifically, when the government interferes with the relationship between a criminal defendant and his attorney. *See Greater Newburyport Clamshell Alliance v. Public Serv. Co. of New Hampshire*, 838 F.2d 13, 19 (1st Cir.1988) ("The sixth amendment provides a shield for the attorney-client privilege only in criminal proceedings; upon the termination of those proceedings and initiation of a civil action putting the privilege at issue, that *constitutional* protection ends.") (emphasis in original). Moreover, before it amounts to a violation of the Sixth Amendment, any government interference with the privilege must substantially prejudice the criminal defendant. *Weatherford v. Bursey*, 429 U.S. 545, 558, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977); *United States v. Hernandez*, 937 F.2d 1490, 1493 (9th Cir.1991); *Clutchette*, 770 F.2d at 1471.

Partington's invocation of the Sixth Amendment does not meet these conditions. The Rule 2 disciplinary hearings are not criminal proceedings, and Clifford Clarke, the person whose Sixth Amendment rights are allegedly at stake, is not a party to this suit. *See United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501,

---

**11.** Hawaii Disciplinary Rules, DR 4–101, *Preservation of Confidences and Secrets of a Client*, §§ (C)(2) & (4) provide that an attorney may reveal

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or

his employees or associates against an accusation of wrongful conduct.

**12.** Significantly, Partington has not claimed that Hawaii interpreted its disciplinary rules in the course of the Rule 13 proceedings so as to prevent him from explaining his conduct.

504 (2nd Cir.1991) ("The privilege against disclosure belongs to the client, not the attorney.") Moreover, Partington has not alleged that Clarke has been prejudiced, or is likely to be prejudiced, if Partington reveals any confidences in his own defense. Thus, Partington cannot overcome the mandate of *Weatherford:* without prejudicial effect to a criminal defendant, there is no Sixth Amendment violation.

Partington's invocation of the Sixth Amendment is, in a sense, premature. We fully recognize the potential harm a criminal defendant stands to suffer if the state forces his attorney to hand over critical secrets. However, if and when it becomes necessary, the Sixth Amendment right to counsel *will* stand as a bar to any governmental use of information obtained in violation of a defendant's attorney-client privilege. For Partington to invoke the Sixth Amendment at this stage, however, reflects a misunderstanding of the relationship between the attorney-client privilege and a criminal defendant's Sixth Amendment right to counsel.[13]

Partington has not demonstrated that the state of Hawaii will interpret its own ethical rules to prevent him from revealing client confidences if necessary to defend himself in the Rule 2 proceedings. Nor has he demonstrated any constitutional bar to his doing so without his client's waiver of the privilege. We conclude, therefore, that the district court's denial of the preliminary injunction was correct.

### Claims 2 & 7

The district court dismissed Claim 2 and Claim 7 on the ground that it had no jurisdiction under the *Rooker–Feldman* doctrine and the Eleventh Amendment to grant the relief requested.

### 1. *Standard of Review*

The existence of subject matter jurisdiction is a question of law we review de novo. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We accept the district court's factual findings supporting the exercise of jurisdiction unless the findings are clearly erroneous. *Stock West, Inc. v. Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

### 2. *Analysis*

▪ Partington's challenge to the Hawaii Supreme Court's imposition of the fifty-dollar fine is similar to the challenge brought in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In *Feldman*, the plaintiff sought to challenge in the United States District Court for the District of Columbia a decision rendered by the District of Columbia Court of Appeals. The District of Columbia Court of Appeals had refused to grant the plaintiff a waiver of a certain bar admission rule; plaintiff challenged both the court's decision denying waiver of the rule and the constitutionality of the rule itself. The Supreme Court held that although the plaintiff could challenge the constitutionality of the state-court *rule* in federal court, he could not challenge "state-court *decisions* in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.* at 486, 103 S.Ct. at 1317 (emphasis added); *accord Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). Under the "*Rooker–Feldman* doctrine," review of state court decisions may only be conducted in the United States Supreme Court. Lower federal courts may not review such decisions.

**13.** Partington's argument is limited to revelations made in the context of state disciplinary hearings. However, if there are Sixth Amendment problems with permitting an attorney to violate the privilege in defending against an accusation of misconduct, the problems are no greater than or different from the problems inherent in permitting an attorney to violate the privilege when attempting to collect remuneration for services, or to prevent the client from doing someone serious bodily harm. Certainly, the harm that a defendant suffers when confidences are revealed does not vary according to the reasons for the attorney's revelation. If we were to accept Partington's argument, then, we would have to hold that the constitution forbids attorneys from revealing confidences under *any* circumstances.

In this instance, Partington did not even allege in federal district court that the rule under which he was sanctioned is unconstitutional. Rather, he asked the district court to review a specific state court decision interpreting a state court rule: the Hawaii Supreme Court's decision to sanction and fine him for violating that court's rules regarding the filing of motions. Partington's request thus collides head-on with the jurisdictional bar of *Rooker–Feldman* doctrine.

■■ Partington, relying on this court's decision in *Robinson v. Ariyoshi,* 753 F.2d 1468 (9th Cir.1985) (subsequent history omitted), argues that *Rooker–Feldman* is inapplicable because the Hawaii Supreme Court never considered his constitutional claims as to why the sanction was improper. In *Robinson,* the Hawaii Supreme Court had explicitly refused to hear federal constitutional claims raised in a plaintiff's petition for rehearing. *Id.* at 1472. In light of this explicit refusal, we approved the federal district court's entertainment of constitutional claims that the state court had refused to consider.

The defendants argue that Partington presented his constitutional arguments to the Hawaii Supreme Court in the form of a written objection to the sanction. Partington responds that the written document he filed was only a request to be heard, and that in refusing him an evidentiary hearing before upholding the sanction, the Hawaii Supreme Court refused to hear his complete constitutional arguments. For its part, the Hawaii Supreme Court, in its order upholding the sanction, stated that it had given "plenary consideration" to all of Partington's claims.

"The lawyer subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard." *Rosenthal v. Justices of the S.Ct. of California,* 910 F.2d 561, 564 (9th Cir.1990) (citations omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991). An opportunity to be heard, however, does not necessarily include an opportunity to present one's arguments orally. The record indicates that Partington filed a motion requesting an evidentiary hearing *as well as* a three-page Memorandum of Points and Authorities in support of his request. Partington himself concedes that he "sketched out" his arguments in his papers. In this case, therefore, we see no reason to disbelieve the state tribunal that Partington's arguments were fully considered, the lack of an evidentiary hearing notwithstanding. In *Robinson,* by contrast, the state court explicitly refused to consider the relevant claims. We find that Partington simply has not alleged an "inability to be heard" that is analogous to the inability of the plaintiffs in *Robinson,* or that justifies a departure from the strictures of *Rooker–Feldman.*

■■ Partington's attempts to secure a return of the fifty dollars are also jurisdictionally barred. Not only does the *Rooker–Feldman* doctrine prevent us from considering the merits of the underlying claim, Partington cannot get the money back because the Eleventh Amendment clearly grants the states immunity from retroactive monetary relief in federal court. *Hutto v. Finney,* 437 U.S. 678, 690, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978). Partington argues that because the fifty dollars is in a separately maintained "discretionary fund," it is not in the "state treasury." He argues, in essence, that the University of Hawaii Law School is not an agency of the state such that its funds can be properly considered a part of state revenues. This position, however, was addressed and rejected in *Hall v. State of Hawaii,* 791 F.2d 759 (9th Cir.1986). In *Hall,* we considered whether Hawaii's Eleventh Amendment immunity protecting it against suits based on state-law claims extended to the University of Hawaii, the Law School, and the board of regents. We concluded that those entities were "clearly immune as agencies of the state." *Id.* at 761. Logically extending our analysis in *Hall,* we find that as "agencies of the state" which enjoy Eleventh Amendment immunity from the suits considered in *Hall,* these entities also enjoy immunity from suits for monetary relief based on federal constitutional claims.

## B. Rule 11 Motion for Sanctions

### 1. Standard of Review

This court reviews a district court's rulings on Rule 11 motions for an abuse of discretion. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1365–66 (9th Cir. 1990) (en banc).

### 2. Analysis

██ Partington argues that the district court should have granted his motion for sanctions because the defendants raised frivolous affirmative defenses in their answer to his complaint and made misrepresentations to the district court about the conduct leading to his fifty-dollar sanction. We find his position wholly untenable.

In its twenty-two page opinion considering Partington's Rule 11 motion, the district court considered each of the defendant's answers, and concluded that under the circumstances most were not frivolous. Similarly, it found that each "misrepresentation" the defendants made was in fact a legal argument they were entitled to make. In the end, the court held that "at *most*, Partington has established that one or two of the defenses alleged by Defendants in their Answer may not be applicable to the case." The district court held further that even if one or two defenses were inapplicable, sanctions were inappropriate because the Answer as a whole was otherwise sound.

We have reviewed the record, and find nothing which supports disturbing the district court's disposition of Partington's Rule 11 motion. The district court did not abuse its discretion in denying the motion.

## C. Denial of Leave to Amend the Complaint

### 1. Standard of Review

This court reviews a district court's denial of leave to amend pleadings after a responsive pleading has been filed for an abuse of discretion. *Thomas–Lazear v. FBI*, 851 F.2d 1202, 1206 (9th Cir.1988).

### 2. Analysis

██ The district court denied the motion to amend primarily because it determined that the claims for relief were barred by judicial immunity. It is well settled that "[j]udges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official functions." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc). Partington argues that the justices' letter and Gedan's statements were not exercises of official judicial functions.

██ "[T]he factors determining whether an act by a judge is a 'judicial' one relates to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978). In this case, the justices wrote the letter opining on the nature of the Rule 13 proceeding within their capacity as arbiters of the Hawaii Disciplinary Rules. The promulgation and enforcement of a state's rules of ethics is frequently a function of the judiciary. *See Supreme Court of Va. v. Consumers Union*, 446 U.S. 719, 734, 100 S.Ct. 1967, 1975, 64 L.Ed.2d 641 (1980) ("legislative" function of the Virginia Supreme Court in promulgating Virginia Bar Code protected by absolute judicial immunity). Partington's arguments notwithstanding, the writing of the letter was not an "administrative function" with consequences that are unprotected by judicial immunity. Administrative functions are actions which are significant independent of the fact that the actor is a judge, such as the hiring or firing of staff members. *Forrester v. White*, 484 U.S. 219, 228–30, 108 S.Ct. 538, 544–46, 98 L.Ed.2d 555 (1988). For Partington and the other attorneys to whom the letter was sent, the letter's significance was very much a function of its authors' judicial offices. Moreover, we have in the past found that behavior which appears far less "judicial" than the conduct at issue here is protected by judicial immunity. *See, e.g., Mireles v. Waco*, —— U.S. ——, ——, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991) (in-

struction to court officers to forcibly bring attorney into courtroom); *Ashelman,* 793 F.2d at 1074 (conspiracy between a judge and a prosecutor to predetermine the outcome of a trial).

We agree with the district court that Partington's third amended complaint could not have overcome the bar to relief imposed by judicial immunity.[14] That the letter in question turned out to contain erroneous information does not alter that immunity. The district court did not abuse its discretion in denying Partington leave to amend his complaint a third time.

## CONCLUSION

We AFFIRM the district court's denial of Partington's Rule 60(b) motion in *Partington v. Gedan.* We AFFIRM the district court's dismissal of the complaint in *Lau v. Lum.* We AFFIRM the district court's decision not to impose Rule 11 sanctions and AFFIRM its refusal to permit Partington to amend his pleadings a third time.

---

**14.** On appeal, Partington's arguments have centered only on whether the writing of the letter was a judicial function. However, his third amended complaint contains three requests for nonmonetary relief that, by virtue of not asking for damages, are unaffected by that inquiry. Nevertheless, these requests notwithstanding, we find that the district court did not err in denying the motion to amend. The three requests mirror, for the most part, the many requests for relief contained in the second amended complaint. Two of the requests suffer from the jurisdictional defects discussed earlier. Under the circumstances, we have no difficulty concluding that the district court did not abuse its discretion in denying Partington leave to amend.